IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1901.

BILLINGTON *v.* JONES.

(*Nashville.* December 7, 1901.)

WILLS. *Revocation.*

It constitutes an effective revocation of a duly executed and published written will for testator to indorse upon it, in pencil, and sign this statement, accompanied by the declaration that he intended thereby to annul it, viz.: "This will is null and void," although he kept it, thus indorsed, in his possession in a lock drawer until his death fifteen years later, never in the meantime, however, having done or said anything of definite nature in regard to the matter.

Cases cited: Smiley v. Gambrill, 2 Head, 164; Allen v. Huff, 1 Yer., 409; Marr v. Marr, 2 Head, 307, 308; Rodgers v. Rodgers, 6 Heis., 496; Allen v. Jeter, 6 Lea, 674; Frear v. Williams, 7 Bax., 550; Stover v. Kendall, 1 Cold., 560; Ford v. Ford, 7 Hum., 104; Smiley v. Gambrill, 2 Head, 168.

FROM MARSHALL.

Appeal in error from the Circuit Court of Marshall County. W. C. HOUSTON, J.

WALKER & McLANE and MARSHALL & ARMSTRONG for Billington.

SMITHSON, ARMSTRONG & NEIL for Jones.

WILKES, J. This is an issue of *devisant vel non* over the will of Reuben Billington. The cause was heard before the trial Judge in the Court below, and the issue was found against the will, and the executor has appealed and assigned errors.

There is no controversy but that the instrument was duly executed in proper form by Reuben Billington, but the contention is that it was revoked and rendered null and void by an indorsement upon it.

It was executed in 1881, and was left in the

care of James Wallace, one of the subscribing witnesses, where it remained some four or five years. Mr. Billington then went to the witness and called for the will, remarking that he wanted to make some changes in it. He took it home with him and kept it for some time in its original condition. His wife was not satisfied with it, because it did not, as she thought, make an equal distribution of his property among his children, and importuned him to change or destroy it. After an attack of illness, he desired to go to California to see one of his children, and as a means of restoring his health. His wife made a condition of her going with him that he should destroy the will.

He thereupon, in answer to her importunities, took the will and wrote upon it below the signature, in pencil, the following words:

"This will is null and void. R. Billington." After thus writing on it, he said to his wife: "Now, I have defaced it, and it is killed." The act of writing was witnessed by his wife and daughter, but they did not, at the time, know what was written. He placed the paper away in a lock drawer, and it was not seen again for more than twelve years, perhaps as many as fifteen, and not until after his death, when it was found in the drawer with other papers, some of which were valuable, and others not. The proof shows that he was a man of

Billington *v.* Jones.

sound mind and fully at himself up to his last sickness and death. He appears to have referred to his will only one time during these years, and that was in the presence of his son, the executor, to the effect that it seemed he would never have any peace about the will. The trial Judge was of opinion, from the proof, that the testator, after executing his will, became dissatisfied with it, and wrote upon it with the purpose of revoking it, and that the writing and signature made under the circumstances showed an intention to cancel, and was sufficient to revoke and cancel the will. It is assigned, as error, that this writing and signature did not amount to a revocation, but that the will could only be revoked by destroying, or by executing some instrument of dignity equal to the will itself, and that this writing was not of that dignity. The fact that the testator kept the paper for a number of years among his valuable papers is urged as an indication that he intended it to continue to be his will, and to take effect as such, while, on the other hand, the fact that the indorsement made in pencil was allowed to remain on the will, and that it was never referred to in the course of fifteen years but once, and then in an indefinite manner, is cited to show that it was considered that the will was cancelled, and no longer effective.

This extraneous testimony appears to be quite

equally balanced, and to throw but little, if any, light upon the real question, whether the will was intended to be revoked and cancelled, or not; so that we must consider the legal effect of the revoking clause, and the acts and statements of the maker of the instrument made at the time of the indorsement as the determinative feature of the case.

Under the English statute of frauds, 29 Charles, 11, Ch. 3, it was provided, in substance, that "there should be no revocation of a written will, duly executed, except by burning, cancelling, tearing, or obliterating." This statute is not in force in Tennessee, and the question in Tennessee, except in cases of revocation by means of a nuncupative will, under our statute, Shannon, § 3900, is controlled by the rules of the civil and ecclesiastical laws, so far as they have become a part of the common law. The important question in all such cases is the intention of the testator. If the testator does some act entirely different from those mentioned in the statute, but with the full intention to revoke, it will be a revocation. Pritchard on Wills, Sec. 266.

And so if he attempt to destroy the will with the purpose of revoking the will, but does not succeed, the act done is effectual to make the revocation; as, for instance, if the testator attempts to burn his will, and believes he has done

so, but by fraud of another a different paper is burned, it will be a revocation if the testator really intended it to be so, and honestly believed the will destroyed. *Smiley* v. *Gambrill, Ex.,* 2 Head, 164.

The question of the intention to revoke, and of the acts done to effect it, are for the jury, while the effect of the act done is a matter for the Court. The facts being found, the Court will decide whether or not they amount to a revocation. 7 Hum., 104; 2 Head, 168.

The intention to revoke, and some act done to carry that intention into execution, must concur. Schouler on Wills, Secs. 387, 388 (3d ed.).

A mere expression of an intention to revoke, without some act to carry it into effect, is not sufficient. *Allen* v. *Huff,* 1 Yerg., 409.

A written will of either personalty or realty cannot be revoked by mere parol. *Allen* v. *Huff,* 1 Yerg., 404; *Marr* v. *Marr,* 2 Head, 307, 308; *Rodgers* v. *Rodgers,* 6 Heis., 496, 498; *Allen* v. *Jeter,* 6 Lea, 674.

If a maker of a will erase his signature, and afterward resign it without an intention to cancel, it will not amount to a revocation or cancellation, but if there is a burning, cancelling, tearing, or otherwise destroying of the instrument, it will be sufficient. *Frear* v. *Williams,* 7 Bax., 550, 553.

And if alterations and obliterations are made, with a view of afterward making a different disposition of the property, they will not amount to a revocation or cancellation if the subsequent disposition is not effectually carried out. *Stover* v. *Kendall,* 1 Cold., 560, 561.

It was held in Connecticut .that the words, "This will is invalid," endorsed upon the back of an instrument, otherwise perfect as a will, was a sufficient cancellation or revocation, there being no statute in that State upon the subject. *Webter* v. *Mott,* 2 Conn., 67; *Card* v. *Guinnan,* 5 Conn., 164, 167; Pritchard on Wills, Sec. 271; 28 Am. State Reports, notes, 344, 351.

In the case at bar it is evident that the revoking clause was written by the testator and signed by him; that he afterward became dissatisfied with its contents, and intended to cancel and revoke it, and so stated to his wife, in the presence of his daughter, and that from that time forward he did not consider that it had any force or efficiency. The only circumstance militating against this view is that he placed the paper in a lock drawer, and kept it for sixteen years without destroying it, but this is counterbalanced by the proof that he did not treat it as being in effect, or refer to it as being still his will, nor did he erase the revoking clause, though it was in pencil and might easily have

Billington *v.* Jones.

been obliterated, if he desired. Under all these circumstances we must hold that the will was revoked and cancelled, and was not in effect at the death of R. Billington, and the judgment of the Court below is affirmed with costs.