GRIMES *et al. v.* NASHVILLE TRUST Co.

(*Nashville,* December Term, 1939.)

Opinion filed June 29, 1940.

FARMER, DENNEY & LEFTWICH and DODSON BATSON, all of Nashville, for contestants.

JOSEPH MARTIN, of Nashville, for Nashville Trust Co., Executor.

STOUT & PORTER, of Clarksville, for proponent Gilbert Lowe.

W. R. FAIN, JR., of Clarksville, for proponents Heirs of A. M. Phipps.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a contest of the validity of the will of H. T. (Dick) Grimes, deceased. The trial judge directed a verdict sustaining the will and the Court of Appeals affirmed this judgment. Contestants have filed a petition for *certiorari.*

There is no material controversy over the facts. Grimes died in 1938. In March, 1932, being a depositor at the American National Bank of Nashville, after a conference with Herbert Fox, an officer of that institution, a will was prepared for Grimes, executed by him and witnessed by Fox and Smith, another officer of the bank. There is no question as to the sanity of Grimes at that time and there is no charge of irregularity about the execution of this instrument.

At this time, March, 1932, the American National Bank and the American and Nashville Trust Company were affiliated institutions. The latter handled all the trust business of the two concerns and was named as executor of the Grimes will. After the execution of that instru-

ment, it was sent over to the American and Nashville Trust Company in an American National Bank envelope, labeled as the will of H. T. Grimes, filed in the vaults of the trust company, and a record made of its receipt.

When Grimes made this will in March, 1932, he was unmarried. He had about $33,000 on deposit at the American National Bank, owned a house and lot in the city, and a farm of about 120 acres on the Dickerson Road. In June, 1932, Grimes married. After his marriage, he and his wife, according to her testimony, had conferences about the will previously made, and he told her that he would make another in which she would be taken care of. Under the will above mentioned, his estate was divided among various relatives and friends, a grand-nephew named Gilbert Lowe being the principal beneficiary

Mrs. Grimes, testator's widow, testifies that she drove into town one morning in November, 1932, and dropped her husband at the American National Bank. He stated that his purpose in going to the bank was to make a new will. The bank official Fox, who had supervised the March will, testifies that Grimes did come in and talk to him about a new will and discussed details of a new will but so far as Fox recalls, no new will was made at that time, at least under the supervision of Fox.

Some time later Mrs. Grimes says that she was at the bank and asked Fox if Mr. Grimes had made a new will and that Fox replied in the affirmative and that she had been taken care of in the new will. Fox remembers the conversation with Mrs. Grimes but his recollection is that he told her Mr. Grimes had planned to make a new will taking care of her.

There is no proof in the record as to the execution of a second will in November, 1932, or prior thereto by the

testator. However, the records of the American and Nashville Trust Company show that a sealed American National Bank envelope was filed with that institution in November, 1932, labeled as the will of Dick Grimes.

In June, 1935, Mr. Grimes went to the bank officer Fox saying that he wanted to get his will and make some changes in it. Meanwhile the Nashville Trust Company had succeeded the American and Nashville Trust Company. A letter was prepared, signed "Dick Grimes," and sent over to the Nashville Trust Company requesting the return of the Dick Grimes will and the envelope so labeled was sent back by Grimes' messenger. The records of the Nashville Trust Company show the delivery of this Dick Grimes envelope in June, 1935.

Some time in 1935 or 1936, the exact date not being fixed, Grimes called on Judge Cook, he and the Judge having been schoolmates and friends since boyhood. Grimes exhibited to Judge Cook an executed will, telling the Judge that he wanted to make a new will and requesting that Judge Cook prepare another will for him. At that time Grimes had not definitely decided how he wanted to dispose of all his property. Judge Cook told him to think the matter over and, when he finally decided about everything, to come back and he (Judge Cook) would prepare the will. Judge Cook remembers nothing of the contents of the will shown him—only recalls that it was an executed will. Grimes told him that the principal change he wanted to make was to reduce or cut out a provision that he had made for some relative. Prior to this interview with Judge Cook, Grimes and his favorite nephew, Gilbert Lowe, had fallen out.

Grimes never returned to Judge Cook's office about the will. Apparently he never made another will. The will exhibited to Judge Cook was not found among the

effects of Grimes after his death in 1938 and presumably was destroyed by him.

Numerous witnesses testify in the case that Grimes told them in his later days that he had no will and proposed dying without one. It does appear that he sent for a friend connected with the American National Bank, just a short while before he died, about making a will but his condition at that time was so low that no testamentary effort was thought advisable.

As stated above, Grimes died in 1938. His wife and friends supposed that he had died intestate and Mrs. Grimes procured the American National Bank to qualify as his administrator.

A few days later the will executed by Grimes in March, 1932, and deposited at the American and Nashville Trust Company was brought out by the Nashville Trust Company, and the latter trust company having succeeded the first trust company, probated the will and qualified as executor.

The question presented to the courts below and to this court is whether this will of March, 1932, was revoked by subsequent acts and accompanying declarations of Grimes. As heretofore noted, the trial judge was of opinion that no sufficient evidence of revocation appeared to justify the submission of the case to the jury and the Court of Appeals concurred in this view.

We think there was evidence sufficient to have warranted the jury in concluding that Grimes made a will subsequent to the will of March, 1932. The records of the trust company showing the receipt in November, 1932, of an envelope labeled as the will of Dick Grimes, the withdrawal of that envelope by Grimes in June, 1935, and the submission a short while thereafter of an executed will to Judge Cook plainly indicates that Grimes

hàd made a second will. He demanded his will from the trust company and evidently got a will from that institution, for there was no complaint from him. All the while the will of March, 1932, remained with the trust company and was there when Grimes died.

Although the jury might have well concluded that Grimes did make a second will, this will having been destroyed, its execution did not amount to a revocation of the first will, unless it was distinctly proven that the second will contained a revoking clause or that the terms of the second will were inconsistent with the terms of the first. *Allen* v. *Jeter*, 74 Tenn. (6 Lea), 672; Sizer's Prichard Law of Wills, section 256. Judge Cook, the only witness testifying in the record who saw this second will, remembers nothing of its contents.

Although Grimes made many declarations that he had no will during his late days, it is conceded that the revocation of a will is not accomplished by mere declarations on the part of a testator.

The rule of our decisions is thus stated in *Jones* v. *Jones*, 143 Tenn., 596, 228 S. W., 405, 406, quoting Mr. Prichard: "Revocation is the act of the mind demonstrated by some outward sign. It is, first of all, a question of intention; but that intention must be shown by some act done or believed to be done to give it effect. An unexecuted intention to revoke, no matter how often declared or strongly made, cannot have the effect to avoid a will, unless the intention be accompanied by some act designed to carry out the purpose of revocation. On the other hand, an act of absolute destruction is not a revocation, if the intention to revoke be clearly wanting. It is the purpose of the mind that gives character to the act; and the intention to revoke must concur with some act of cancellation, mutilation or destruction done or

attempted, to effect the revocation of a will. If they do so concur, the will is as effectually revoked as if it had never been executed, and can never be set up unless re-executed.''

The foregoing is fully supported by our earlier cases of *Ford* v. *Ford,* 26 Tenn. (7 Humph.), 92, and *Smiley* v. *Gambill,* 39 Tenn. (2 Head), 164.

In *Ford* v. *Ford, supra,* testator directed that his will be burned. Another paper instead of the will, however, was burned. This would have amounted to a revocation except for the fact that the testator later discovered the will still to be in existence, and for the further fact that the testator was out of his head—insane—when he directed the burning of the will.

In *Smiley* v. *Gambill, supra,* the testatrix undertook to burn her will which she thought she recognized by a piece of red tape around it. As a matter of fact she burned another paper, which the proof indicated had been substituted for the will by the principal beneficiary thereof. This was held to be a revocation.

These cases do not reach the facts before us. Grimes undoubtedly intended to revoke a will and he will be presumed to have revoked the will exhibited by him to Judge Cook which no doubt was the will withdrawn by him from the trust company. That the will so withdrawn was the will he intended to withdraw and the will he revoked is obvious on this record. Fox, the bank official previously mentioned, and Renshaw, another official of the American National Bank and a very close friend of Grimes, both undertook to state as their ''impression'' that Grimes had entirely forgotten about the will of March, 1932.

While these ''impressions'' of the witnesses were properly excluded by the trial judge, we think we may arrive at the same impression, as a deduction from the facts

properly proven. All the evidence tends to show that Grimes regarded himself as intestate in his later days when the will exhibited to Judge Cook had no doubt been destroyed.

██ ██ Such is our view of the matter. We find no authority, however, which would justify us in saying that forgetfulness of a testator can be effective as revocation. As our decisions hold, there must be some act of a revoking nature done or believed to be done by the testator to revoke a valid testamentary paper. A slip of the memory is not such an act.

We have considered carefully the elaborate argument made in support of the petition for *certiorari* but do not think the case requires further discussion. We agree with the courts below that there was no revocation of the will of March, 1932.