GREGORY *v.* SUSONG *et al.*

(*Knoxville*, September Term, 1947.)

Opinion filed October 18, 1947.

KILGO & ARMSTRONG, of Greeneville, for plaintiff in error.

LEON E. EASTERLY, of Greeneville, for defendant in error.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This is a will contest filed by a son, Claudie (Claude F.) Gregory, to contest the will and codicil of his mother, Mrs. Minnie Gregory. The ground of the contest is an alleged

revocation of the will and codicil by the testatrix on her deathbed.

Upon the filing of the contest in the Circuit Court, the defendants demurred. The contestant was allowed to amend his petition and the defendants then filed plea to the merits. The jury found in favor of the contestant and set aside the will and codicil. After motion for new trial was overruled, the proponents appealed to the Court of Appeals, and that Court reversed and remanded for the entry of an order sustaining the will and codicil. We granted *certiorari*.

The first assignment of error is that the Court of Appeals erred in overruling a motion of contestant to dismiss the appeal because some of the proponents, being legatees and devisees, failed to give bond in accordance with the requirements of Code, secs. 8104, 8105. Of this motion the Court of Appeals said, merely: "The contestant and contestees raised some questions relative to procedural matters. These matters were not brought to the attention of the trial judge and seemed to have been waived. They will not be further noticed."

The motion on which the assignment is based was not made in the Trial Court, nor otherwise brought to the attention of the Trial Judge. As made, it came too late and could not be considered in a Court of which the jurisdiction is appellate only. Code, sec. 10618. Further, failure to make bond under Code, secs. 8104, 8105 would not have justified dismissal of the appeal in any event, since two of the Appellants were executors of the will, and as such are not required to make bond under the Code sections cited.

The remaining assignments of error are considered together in petition for *certiorari* and we will so consider them here. They insist that the Court of Appeals erred

in not holding that under the law and evidence, Mrs. Gregory effected a valid revocation of the will and codicil.

In 1939, when Mrs. Gregory executed her will, and in 1943, when Mrs. Gregory executed the codicil, she and her son, Claude, the contestant, were on bad terms on account of litigation which the son had brought against the mother, who, on account of ill-will engendered by the lawsuit, cut the son out of a share of her estate with a nominal legacy of $3. She made no change in this bequest in the codicil of 1943. She left the will and codicil in the custody of Dr. H. J. Lamons, one of the witnesses, and these were the only papers of the testatrix that the doctor had in his keeping.

Because Mrs. Gregory had said, while in a semi-conscious condition; "Oh Lord if you don't help me I'm going to torment," and because this was taken by those who heard her to be a reference to her enmity toward the son, on April 20, 1944, three days before the mother's death, the son was sent for and went to see his mother at the hospital and there was apparently a reconciliation. The petitioner insists that later, on the same night, the testatrix revoked the will and codicil. Since this is the crux of the lawsuit it is necessary to detail the testimony. The relevant evidence is that of a grandson, Andrew Southerland, and that of a brother of contestant, Albert Gregory, as to this, Southerland testified:

"Q. You returned to the hospital the next night you say? A. Yes, sir.

"Q. What occurred then? A. She (the Testatrix) wanted some papers tore up, and Albert handed her some Kleenex, and he handed her some toilet paper, and she didn't want that, she told him she couldn't tear that, and he handed her a newspaper, and she said, 'That is not the paper I want, I want the paper Dock Lamons has got.'

She repeated that twice, and he handed her some more paper, and she said, 'No, I don't want that,' and he gave her a little larger piece, and she got it up against the sheet, and she said it was so tough she couldn't tear it, and Albert tore it up, and she hushed then.

"Q. How long a period of time did that cover that she was wanting papers to tear up? A. I expect it was 15 minutes.

"Q. Did he give her a newspaper, or what paper did he give her besides the toilet paper and the Kleenex? A. He give her toilet paper, Kleenex, and newspaper.

"Q. Did he tell her he would tear it up? A. She got it up against the sheet, and she said it was so tough she couldn't tear it, and he tore it up for her.

"Q. When was that? A. Thursday night."

During his cross-examination he was asked by the Court: "What was that tough paper she claimed she was trying to tear up?" To which he replied: "Tissue where she got it against the sheet."

And on further cross-examination he said she had hold of the bed cover and the paper.

Albert Gregory, after stating that the nature of his mother's illness had made it necessary for her to use Kleenex to remove accumulated phlegm from her nose and throat, testified:

"Well, she called for paper, but she had called for paper before, and I had been handing her Kleenex. I had been with her quite a while back before, and this time when she called for paper I thought that was what she wanted, and I got the Kleenex paper and handed it to her, and she wadded it up in her hand and threw it out on the floor and said: 'Those are not them papers.' She talked so weak I couldn't hardly understand her, and then she raised her voice and said: 'Them papers in Herbert Lamons' office.'

She had her eyes shut, and she fumbled around and got hold of the bedspread and tried to tear it, and then she said to me: 'See if you can tear them.' I had no papers, she had torn up what I give her, and I thought she was kinder out of her head, so I made no effort to see Herbert Lamons anything about the papers.

"Q. I wish you would repeat what occurred there when you gave her the Kleenex. A. She turned around just as soon as I had given her these papers and says: 'Those are not them papers,' and she wadded them up and threw them on the floor, and she turned around and said: 'Have you got them papers in Herbert Lamons' office?' Her eyes were shut like this, (indicating), and then she fumbled around and got hold of the bedspread and tried to tear it, and then she said, 'I can't tear them, see if you can tear them.'

"Q. Did you among her mumblings understand her to say something about Herbert Lamons on one occasion? A. Only that one time when she called for those papers. She talked so weak I couldn't hardly understand her, and she did finally raise her voice so I could understand her, and she turned around and commenced trying to tear the bedspread, and I thought she was kinder out of her head, and I made no effort to talk to Herbert Lamons.

"Q. You knew of no will anywhere? A. No, sir.

"Q. And I believe your mother never did mention the word will to you? A. No, sir, she never did.

"How many hours before her death would you say it was that that occurred? A. It was 24 to 36 hours, or about that. I didn't pay particular attention to it."

Testimony of Mrs. Minnie B. Massey, a daughter, and of Remer Gregory, a son of testatrix, is merely cumulative of the excerpts copied.

Neither Albert Gregory nor any of the other children nor grandchildren knew that Mrs. Gregory had made a will, so that there is no question of fraudulent substitution, and the rule of *Ford* v. *Ford*, 26 Tenn. 92; and *Smiley* v. *Gambill*, 39 Tenn. 164, has no application here.

█ On careful analysis, since the facts are not disputed, the determinative question here is whether doing and saying what she said and did in the foregoing excerpts from the transcript, which contain all the evidence on the point, Mrs. Gregory effectually revoked her will and codicil.

"The question of the intention to revoke, and of the acts done to effect it are for the jury, while the effect of the act done is a matter for the court. *The facts being found, the court will decide whether or not they amount to a revocation."* *Billington* v. *Jones*, 108 Tenn. 234, 239, 66 S. W. 1127, 1128, 56 L. R. A. 654, 91 Am. St. Rep. 751. (Italics ours.)

"Revocation is a question of intention, and evidence is admissible to show that intention, by any act done, or believed to have been done. The act done, or aimed to be done, as well as the purpose of the mind for which it was done, are matters of fact for the jury. *Burns* v. *Burns*, 4 Serg. & R. 295, 567. And these may be established as other facts, by one credible witness, or convincing circumstances. *But what facts amount to a revocation is, of course, a question of law."* *Smiley* v. *Gambill*, 39 Tenn. 164, 167. (Italics ours.)

"Revocation is the act of the mind demonstrated by some outward sign. It is, first of all, a question of intention; but that intention must be shown by some act done or believed to be done to give it effect. An unexecuted intention to revoke, no matter how often declared or strongly made, cannot have the effect to avoid a will, un-

less the intention be accompanied by some act designed to carry out the purpose of revocation." *Jones* v. *Jones*, 143 Tenn. 596, 600, 228 S. W. 405, 406. Pritchard on Wills, sec. 266; *Grimes* v. *Nashville Trust Co.*, 176 Tenn. 366, 141 S. W. (2d) 890.

■ The same degree of mental capacity is required to revoke as to execute a will. *Greer* v. *McCrackin*, 7 Tenn. 301; *Ford* v. *Ford, supra;* Underhill, Wills, Vol. 1, p. 307.

■ Since the effect of Mrs. Gregory's words and acts are for our determination (*Billington* v. *Jones*, supra) we have grave doubt that she was at the hospital on Thursday, April 18th, of sufficient mental capacity to be fully aware of what she was doing. Her eyes were closed and she was physically so weak that she could not tear a newspaper. Her speech, too, was indistinct and though she clearly mentioned "Doc. Lamons" she never used the words "will" or "codicil," nor on that occasion did she mention the name of the contestant. Even if at first, she was expressing a desire to tear up the will and codicil, and we should presume that her mental capacity was then legally sufficient, she certainly abandoned the intention when, according to the evidence, she saw her son, Albert, tear up a piece of tissue paper. If she had sufficient mental capacity to revoke her will she must have had sufficient mental capacity to have been aware of the difference between the appearance of tissue paper and a legal document.

Further, as is well said by Judge HALE, writing the opinion of the Court of Appeals:

"The will, as copied in the transcript, consisted of nearly four pages. The codicil required three additional pages. It is quite difficult to see how any one with sufficient capacity to revoke a will could mistake such a document for a piece of tissue. Then too it was not shown how

many minutes elapsed from the time Mrs. Gregory mentioned Dr. Lamons until the last bit of tissue was handed to her; it is not shown where Dr. Lamons had his office with respect to the hospital, or that he was there at the particular time Mrs. Gregory requested the will, or would have been available to surrender it.

"It is true that the only papers he had belonging to Mrs. Gregory were the will and codicil. When she referred to 'the paper' (as stated by Andrew Southerland) or 'them papers' (as stated by Albert Gregory) was she referring to the original will? or to the codicil? or to both?

"If we infer an intent to destroy both the will and codicil, can we accept the mere intention or endeavor to destroy the will as a substitute for or the equivalent of the act itself?

"We do not think so. We cannot pile inference upon inference and by this manner of reasoning conclude the act was evidenced by the desire. We have at most a symbolical destruction.

"In *Throckmorton* v. *Holt*, 180 U. S. 552, at page 587, 21 S. Ct. 474, at page 488, 45 L. Ed. 663, at page 679, Mr. Justice PECKMAN said:

" 'As is stated by JAMES, Lord Justice, in *Cheese* v. *Lovejoy*, L. R. 2 Prob. Div. 251, in speaking of the evidence of revocation: 'It is quite clear that a symbolical burning will not do, a symbolical tearing will not do, nor will a symbolical destruction. There must be the act as well as the intention.' "

Petitioner insists that since there was some evidence to support the verdict of the jury that we are bound to affirm it. He cites *Walton* v. *Burchel*, 121 Tenn. 715, 121 S. W. 391, 130 Am. St. Rep. 788, in support of this contention, but we think that rule is not applicable here. Having asserted the fact of revocation, the contestant

had the burden of proving it and the function of the Court is clearly stated to be, since revocation of a will is a technical legal matter, that [108 Tenn. 234, 66 S. W. 1128]: "The facts being found, *the court* will decide whether or not they amount to a revocation." *Billington* v. *Jones, supra.* (Italics ours.)

In this case, there was no act of the testatrix upon the will or codicil, such as mutilation, cancellation or attempted destruction, to evidence an intentional revocation. There was no fraudulent substitution of another paper to bring the case within the rule of *Smiley* v. *Gambill, supra,* and if we give the contestant the benefit of the inferences most favorable to his contention, a clear declaration by the testatrix that she wanted to tear up the will and codicil that were in the keeping of Dr. Lamons would be insufficient to effect a revocation.

"A simple determination of the mind, never executed, no matter how often declared or strongly made, however, cannot have the effect to avoid the writing, but this must be accompanied by some act designed to carry out the purpose of revocation." *Smiley* v. *Gambill,* 39 Tenn. 164, 167.

The act of revocation must be "by injury to the instrument itself." 68 C. J., Wills, p. 814.

We cannot allow the equities of the situation to sway our judgment on the facts disclosing Mrs. Gregory's physical condition and purpose. The will may not have been a just will but it was her will. *Church of Christ* v. *McDonald,* 180 Tenn. 86, 171 S. W. (2d) 817, 146 A. L. R. 1173; *Marr* v. *Marr,* 39 Tenn. 303.

We find no error and the judgment of the Court of Appeals is affirmed.

NEIL, C. J., and PREWITT and TOMLINSON, J. J., concur.

BURNETT, J., not participating.