IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2004 Session

## IN RE ESTATE OF JOSEPH OWEN BOOTE, JR.

**Appeal from the Chancery Court for Marshall County**
**No. 12099     J. B. Cox, Chancellor**

---

**No. M2002-02234-COA-R3-CV[1] - Filed October 21, 2005**

---

This appeal involves a dispute stemming from an effort to probate a will and two codicils in solemn form. The testator's widow filed a petition to probate these instruments in solemn form in the Chancery Court for Marshall County. Prior to the entry of an order admitting the will and two codicils to probate, the widow discovered that a third codicil she believed to have been destroyed had, in fact, not been destroyed by her late husband or in his presence and that her late husband's lawyer had made a copy of this codicil before destroying it himself. Accordingly, she filed a petition for declaratory judgment seeking to admit the third codicil to the probate in solemn form along with the will and the other two codicils. Thereafter, the trial court entered an order admitting the will and the first two codicils to probate in solemn form without mentioning the declaratory judgment petition. The testator's daughters moved to dismiss the declaratory judgment petition, and the testator's widow filed a motion for post-judgment relief from the order admitting the will and the first two codicils to probate in solemn form. Following a series of hearings, the trial court dismissed the declaratory judgment petition and denied the motion for post-judgment relief. The testator's widow appealed. We have determined that the order admitting the will and the first two codicils must be vacated and the case remanded for further proceedings regarding the third codicil.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Andrée Sophia Blumstein and William L. Harbison, Nashville, Tennessee, for the appellees, Helen Boote Shivers and Linda Boote Gerritsen.

Walter W. Bussart and Lee Bussart Bowles, Lewisburg, Tennessee, for the appellant, Martha M. Boote.

---

[1] On April 30, 2003, this court entered an order consolidating the present appeal with another appeal arising out of the same probate case. The appeals were argued together before this court. For the sake of simplicity, this opinion deals solely with *In re Estate of Boote*, No. M2002-02234-COA-R3-CV. An opinion in *Boote v. Shivers*, No. M2003-00560-COA-R3-CV is being filed concurrently herewith. This court has previously issued an opinion in yet another appeal arising out of this case that was not consolidated with the other two appeals. *Estate of Boote v. Shivers*, No. M2003-02656-COA-R3-CV, 2005 WL 1277867 (Tenn. Ct. App. May 27, 2005) (No Tenn. R. App. P. 11 application filed).

# OPINION

## I.

Martha McCaleb Lingner ("Ms. Boote") married Joseph Owen Boote, Jr. on December 28, 1990 in Lewisburg, Tennessee. He was eighty-three years old, and she was seventy-four. Both had been previously widowed. Mr. Boote had two children from his first marriage, Helen B. Shivers and Linda B. Gerritsen. Ms. Boote had one child from a previous marriage, Pamela L. Smith. Ms. Boote and Mr. Boote each had several grandchildren. Both were well off financially, although Mr. Boote was far wealthier than Ms. Boote.[2] Eleven days before the wedding, Ms. Boote and Mr. Boote entered into an antenuptial agreement that eliminated or dramatically restricted their respective statutory rights to the assets or estate of the other in the event of divorce or death.[3]

On July 16, 1991, Mr. Boote executed a new will conforming to the terms of the antenuptial agreement. The will was prepared by Michael D. Sontag of Bass, Berry & Sims in Nashville, the same attorney who had prepared the antenuptial agreement. The will established a $600,000 marital trust, the income from which was to be paid to Ms. Boote during her lifetime if Mr. Boote predeceased her. On Ms. Boote's death, the corpus of the marital trust was to be divided equally between Ms. Shivers and Ms. Gerritsen. The will established generation-skipping trusts in the names of Ms. Shivers and Ms. Gerritsen and directed that Mr. Boote's residuary estate and personal property be divided equally between them. The will nominated Ms. Shivers and Ms. Gerritsen to serve as co-executrices of the estate.

By all accounts, the marriage between Ms. Boote and Mr. Boote was an extraordinarily happy one. He adored her, and she adored him. Seven years into the marriage, Mr. Boote decided to make some changes in the distribution of his estate. He was considering having the 1991 will rewritten entirely. He asked his Lewisburg attorney, Thomas A. "Drew" Davidson, to review it. Mr. Davidson evaluated the will for some time and then talked Mr. Boote out of rewriting it on the theory that doing so might destroy the tax-exempt status of the trusts. He advised Mr. Boote that he could make changes in the distribution of his estate by executing a codicil to his existing will. Although Mr. Davidson knew that Mr. Boote and Ms. Boote had entered into an antenuptial agreement, he did not review it before offering Mr. Boote legal advice regarding his estate.[4]

---

[2]Financial disclosure statements prepared shortly before the wedding placed Ms. Boote's net worth at approximately $1.4 million and Mr. Boote's net worth at approximately $9.3 million.

[3]The enforceability of the antenuptial agreement is the subject of the opinion in *Boote v. Shivers*, No. M2003-00560-COA-R3-CV, which is being filed concurrently herewith.

[4]Over the next three years, Mr. Davidson repeatedly advised Mr. Boote regarding estate planning matters and drafted several testamentary documents for him. Remarkably, in all this time, Mr. Davidson never once reviewed the antenuptial agreement or prepared a written agreement for Mr. Boote and Ms. Boote to sign to revoke it. According to Mr. Davidson, he knew how important it was to understand the provisions of the antenuptial agreement in advising Mr. Boote regarding estate planning matters. He claims that he tried diligently to obtain a copy of the antenuptial agreement but was frustrated in his efforts to do so because neither Mr. Boote nor Ms. Boote had a copy of it, and Mr. Boote could not remember who had prepared it.

(continued...)

At Mr. Boote's direction, Mr. Davidson prepared a codicil to the will transforming the $600,000 marital trust into an outright bequest to Ms. Boote, adding a bequest of $300,000 to Mr. Boote's sister, and incorporating a no contest clause into the will.[5] The codicil also nominated Ms. Boote to serve as the sole executrix for the estate. Mr. Boote executed the codicil on June 18, 1998. A few months later, Mr. Boote decided to add a bequest of $100,000 to the First Presbyterian Church of Lewisburg. Mr. Davidson prepared a second codicil adding this bequest, and Mr. Boote executed it on December 29, 1998.

A little over a year later, Mr. Boote visited Mr. Davidson again. He had heard that a spouse could dissent from a will and take an elective share of a deceased spouse's estate. Mr. Davidson, again without reviewing the antenuptial agreement, advised Mr. Boote that if Ms. Boote dissented from his will, she would be entitled to a child's share, but no less than a third, of his estate. Mr. Davidson said that a dissenting spouse's share is taken "off the top" and that if Ms. Boote dissented from the will, Ms. Shivers and Ms. Gerritsen would have to pay all of the estate taxes and expenses out of their shares. Mr. Boote said such an arrangement would be unfair to his daughters and that he wanted to structure his will so that Ms. Boote and his two daughters would each receive a third of his estate after the payment of all estate taxes and expenses.

Mr. Davidson advised Mr. Boote that this division could be accomplished through the execution of a third codicil. At Mr. Boote's request, Mr. Davidson prepared a third codicil directing that Mr. Boote's residuary estate would be divided equally among Ms. Boote, Ms. Shivers, and Ms. Gerritsen after the payment of all estate taxes and expenses. The third codicil also nominated Mr. Davidson to serve as co-executor of the estate with Ms. Boote. Mr. Boote executed the third codicil on February 14, 2000.

Six to eight weeks later, Mr. Davidson received a telephone call from Ms. Smith, Ms. Boote's daughter. She said he had messed things up by dividing Mr. Boote's estate too much and persuading Mr. Boote to leave too much money to her mother. She said that Ms. Shivers and Ms. Gerritsen would be furious, that there would be an enormous fight over the estate, and that it would be all Mr. Davidson's fault. When Mr. Davidson suggested to Ms. Smith that she did not know what was in the third codicil, she responded that it was her understanding that under the third codicil, Mr. Boote's estate would be split three ways among her mother, Ms. Shivers, and Ms. Gerritsen. Mr. Davidson told Ms. Smith, somewhat disingenuously, that she did not have a full grasp of what was in the third codicil, that

---

[4](...continued)
Mr. Davidson's account of his actions strains credulity. He knew that Bass, Berry & Sims prepared Mr. Boote's will and other legal documents that were executed shortly after Mr. Boote married Ms. Boote. A simple telephone call to Bass, Berry & Sims would have enabled Mr. Davidson to obtain a copy of the antenuptial agreement for his files. From the record on appeal, Mr. Davidson's actions appear to be more consistent with Ms. Boote's explanation for Mr. Davidson's failure to review the antenuptial agreement. According to Ms. Boote, both she and her husband asked Mr. Davidson about the antenuptial agreement, but he told them that antenuptial agreements are unenforceable in Tennessee, that their antenuptial agreement was not worth the paper it was written on, and that it was therefore unnecessary for him to review it before drafting testamentary instruments for Mr. Boote and providing him with estate planning advice.

[5]Mr. Davidson knew that Mr. Boote anticipated a will contest. At Mr. Davidson's suggestion, the no contest clause was included in an effort to stave off a will contest.

Mr. Boote had made some additional provisions for Ms. Boote, and that the third codicil was a well written document that would be enforceable.

In late April 2001, well over a year after the execution of the third codicil, Mr. Boote again visited Mr. Davidson at his office. By this time, Mr. Boote was ninety-three years old, and his health had been failing. He could barely walk on his own. He was accompanied by Ms. Boote and an assistant Ms. Boote hired to help her care for Mr. Boote. Ms. Boote and the assistant waited in the front room of Mr. Davidson's office out of earshot while Mr. Boote met with Mr. Davidson in a conference room. The only evidence in the record regarding what occurred at this meeting is the deposition testimony of Mr. Davidson.

According to Mr. Davidson, Mr. Boote was upset. He said that he had made a lot of people mad, that everyone was fussing at him, and that no matter what he did, he could not seem to please everyone. He asked Mr. Davidson what would happen if Ms. Boote simply dissented from his will. Mr. Davidson did not answer Mr. Boote's question directly and instead told him that his wishes were covered by the third codicil. Mr. Boote replied that the third codicil was causing him a lot of trouble and that he wanted Mr. Davidson to tear it up. Mr. Boote said that his family was going to fight no matter what he did and that Ms. Boote could simply dissent from the will. Mr. Davidson claims he attempted to persuade Mr. Boote not to revoke the third codicil. However, he admits that he did not mention the antenuptial agreement or warn Mr. Boote that it could prevent Ms. Boote from dissenting from the will and taking an elective share of the estate.[6]

Mr. Davidson informed Mr. Boote that if he wanted to revoke the third codicil, he would have to tear it up himself.[7] However, when Mr. Davidson offered to retrieve the third codicil from his office safe so that Mr. Boote could tear it up, Mr. Boote said that he did not want to tear it up, that Ms. Boote was coming down the hall, and that he did not have time to tear it up. Mr. Boote started to get up to leave, and as he did so, he exclaimed, "Just tear the damn thing up." Mr. Boote then walked out of the conference room and left Mr. Davidson's office.

In spite of Mr. Boote's extremely advanced age, declining health, and sizeable estate, as well as strong indications that there would be legal disputes over the distribution of the estate, Mr. Davidson failed to contact Mr. Boote for more than a month following the April 2001 meeting to obtain clarification regarding Mr. Boote's wishes and, if necessary, to schedule a meeting at which the third

---

[6]When questioned at his deposition regarding whether he raised the issue of the antenuptial agreement at the April 2001 meeting, Mr. Davidson responded as follows: "No. I had come to accept that I was never going to see the prenuptial agreement until it rose up to bite somebody some day."

[7]Mr. Davidson apparently believed, erroneously, that the third codicil could be revoked through physical destruction only if Mr. Boote tore up the original himself. In the context of revocation through physical destruction, it is certainly preferable if the testator or testatrix destroys the original of the will or codicil personally. However, the statute governing revocation expressly provides that a will or codicil can be revoked by being burned, torn, cancelled, obliterated, or destroyed by someone other than the testator or testatrix as long as the destructive act is performed in the testator or testatrix's presence and at his or her direction. Tenn. Code Ann. § 32-1-201(3) (2001).

codicil could be revoked in accordance with the statutory requirements.[8] The record on appeal provides no explanation for Mr. Davidson's extraordinary lapse of judgment in this regard. In addition, it appears from the record that Mr. Davidson did not document his conversation with Mr. Boote in any way, e.g., by sending Mr. Boote a confirming letter detailing the contents of their discussion and advising him of the proper procedures for revoking a will or codicil.

On June 1, 2001, Mr. Boote was admitted to the Marshall Medical Center. He had suffered several mini-strokes and was diagnosed with kidney failure. Three days later, he was transferred to Oakwood, a skilled nursing facility. Mr. Davidson visited Mr. Boote both at the Marshall Medical Center and at Oakwood. According to Mr. Davidson, he was hoping that Mr. Boote would say something about the third codicil along the lines of "You didn't tear it up, did you?," or "If you did, let's redo it." By the time of Mr. Davidson's first visit, Mr. Boote was no longer able to communicate, and Mr. Davidson was unsure whether Mr. Boote even recognized him. Mr. Boote eventually fell into a coma and died at Oakwood on September 12, 2001.

Approximately a month before Mr. Boote died, Mr. Davidson was told by Mr. Boote's family and the staff at Oakwood that Mr. Boote was not going to recover. Mr. Davidson contacted four local attorneys for advice regarding what he should do about the third codicil.[9] He told them that a client had directed him to destroy a legal document that he had prepared, that he had not destroyed the document as directed, and that the client had since fallen into a coma and was unlikely to recover. He did not provide them with the details of the case. According to Mr. Davidson, all four told him that he should follow his client's last directive and destroy the document.[10]

Without consulting Ms. Boote or anyone else acting on Mr. Boote's behalf, Mr. Davidson retrieved the third codicil from his office safe, made a copy of it, and destroyed the original by feeding it into a paper shredder in his office. He placed the copy in his office safe along with Mr. Boote's other legal papers. By his own admission, he knew, at the time he shredded the original of the third codicil, that his actions did not comply with the statutory requirements for revoking a codicil by physical destruction. Mr. Davidson did not tell anyone what he had done.

The day after Mr. Boote died, Mr. Davidson began preparing a petition to have the will and the first and second codicils admitted to probate in solemn form. The third codicil was not mentioned at all in the petition, nor was a copy of it attached to the petition along with the will and the first two codicils. The petition estimated the value of Mr. Boote's estate to be approximately fifteen million

---

[8]In addition to revocation by physical destruction, the revocation statute allows a testator or testatrix to revoke a will or codicil by executing a later will or codicil or by executing a separate document of revocation in compliance with all the formalities for an attested or holographic will. Tenn. Code Ann. § 32-1-201(1)-(2). Both methods are far preferable to revocation through physical destruction.

[9]One of these local attorneys was Walter M. Bussart, who later represented Ms. Boote in the probate proceedings in her personal capacity as a beneficiary of the estate.

[10]It is not clear from Mr. Davidson's deposition testimony whether he informed the four attorneys he consulted that the document in question was a codicil to a will. The omission of this material fact would obviously have affected the advice they would have given him.

dollars,[11] requested a November 15, 2001 hearing at which the will and the first two codicils would be formally offered for probate in solemn form, and asked that letters testamentary be issued to Ms. Boote as the executrix nominated by the first codicil. The petition listed the other named beneficiaries and stated that Ms. Boote would provide them with notice of the hearing and their right to contest the will and first two codicils at that time.

The petition explicitly stated that Ms. Boote was "aware of no document(s) in existence that either revoke or alter the instruments being offered by her for probate in the Decedent's Last Will & Testament and two (2) Codicils thereto." Ms. Boote knew that her husband had executed a third codicil to his will, but she had never seen it. She asked Mr. Davidson what had happened to the third codicil when she met with him on September 26, 2001 to sign a letter of engagement hiring him as the attorney for the estate and to discuss the probate petition. Mr. Davidson told her only that Mr. Boote had "revoked" it. He did not tell her that the third codicil had been revoked through physical destruction, nor did he tell her that he knew that it had not been destroyed in compliance with the statutory requirements for revoking wills and codicils. Mr. Davidson did not give Ms. Boote a copy of the third codicil or even inform her that a copy of it still existed. Ms. Boote signed the petition and the letter of engagement, and Mr. Davidson filed the petition later that day in the Marshall County Chancery Court.

In mid-October 2001, Mr. Davidson met for the first time with the attorneys for Ms. Shivers and Ms. Gerritsen. Mr. Davidson told them that there had at one time been a third codicil to Mr. Boote's will that provided for an equal division of Mr. Boote's estate among Ms. Boote, Ms. Shivers, and Ms. Gerritsen. He said that Mr. Boote had revoked the third codicil but provided no further details. According to Mr. Davidson, he was careful to use the word "revoked" rather than "destroyed" or some other word. He did not mention that he had kept a copy of the third codicil.

During this meeting, the attorneys for Ms. Shivers and Ms. Gerritsen showed Mr. Davidson a copy of the antenuptial agreement that they had obtained from Bass, Berry & Sims. According to Mr. Davidson, this was the first time he had ever seen the agreement. He realized immediately that it purported to bar Ms. Boote from dissenting from Mr. Boote's will and taking an elective share of his estate. He obtained a copy of the agreement from Ms. Shivers and Ms. Gerritsen's attorneys, and later that day or the following day, he gave a copy to Ms. Boote. He did not tell her that it purported to bar her from dissenting from Mr. Boote's will. He did not disclose the circumstances surrounding the destruction of the third codicil given their renewed importance in light of the terms of the antenuptial agreement. Instead, he merely told her that it would have "some effect."[12]

On November 2, 2001, the trial court entered an agreed order signed by counsel for Ms. Boote, Ms. Shivers, and Ms. Gerritsen in which they stipulated that the will, "sans Codicils," should be admitted to probate in solemn form and waived the requirement that the witnesses who attested the will

[11]In reality, Mr. Boote's estate was worth well over twice this amount at the time of his death.

[12]According to Mr. Davidson, he also told Ms. Boote at this meeting that he represented her solely in her capacity as the nominated executrix for the estate, that he could advise her regarding estate matters only, and that she should consult with an attorney retained to represent her in her personal capacity as a beneficiary of the estate for advice regarding the effect of the antenuptial agreement. Mr. Davidson's claim does not square with the fact that shortly after this meeting, he signed a stipulation and agreed order on behalf of Ms. Boote as her attorney in her personal capacity as a named beneficiary.

appear and testify at the November 15, 2001 hearing. The order stated that the agreement did not apply to the first and second codicils "at the present time." Also on November 2, 2001, Mr. Bussart filed a notice of appearance as counsel of record for Ms. Boote in her individual capacity as a named beneficiary of the estate. Mr. Davidson told Mr. Bussart that there had been a third codicil at one time that would have divided the estate three ways among Ms. Boote, Ms. Shivers, and Ms. Gerritsen. Consistent with his pattern, Mr. Davidson told Mr. Bussart that Mr. Boote had "revoked" it but did not tell him any of the circumstances surrounding the destruction of the third codicil or inform him that he had a copy of it in his office safe.

Less than two weeks later, on November 15, 2001, the hearing to present the will and first two codicils for probate in solemn form proceeded as scheduled. Mr. Davidson appeared on behalf of Ms. Boote in her capacity as the nominated executrix, and Mr. Bussart appeared on her behalf in her capacity as a named beneficiary. The trial court acknowledged the agreed order stipulating to the validity of the will and heard testimony from the attesting witnesses to the execution of the first and second codicils. Although all parties knew that a third codicil had existed at one time, no one mentioned that fact to the trial court at the hearing.

At the conclusion of the hearing, counsel for Ms. Shivers and Ms. Gerritsen offered to prepare a draft order admitting the will and the first two codicils to probate in solemn form and to submit it for the court's approval. The trial court instructed the parties to work together on the draft order. At Mr. Davidson's request, the trial court directed that the court clerk could issue letters testamentary to Ms. Boote on a provisional basis after the hearing but stated that they would be subject to the terms of the final order once it was entered. Over the next few weeks, counsel for the parties circulated several drafts of proposed orders but were unable to reach an agreement. They eventually filed competing versions of a final order for the court's approval.

In the meantime, Mr. Bussart discovered the circumstances surrounding the destruction of the third codicil.[13] He asked Mr. Davidson if he had made a copy of the third codicil before destroying the original, and Mr. Davidson said that he had. Mr. Davidson had a copy of the third codicil hand-delivered to Mr. Bussart's office. On the envelope containing the third codicil, Mr. Davidson wrote the following note: "Walter: Martha has never seen this. She only knew it existed at one time. . . . She never knew any of the details." Mr. Davidson also sent a copy of the third codicil to counsel for Ms. Shivers and Ms. Gerritsen. In the accompanying cover letter, Mr. Davidson said that he could "no longer remain silent" about the third codicil and that he anticipated being deposed regarding the details surrounding the destruction of the original.

Mr. Bussart received the copy of the third codicil on December 7, 2001. He filed a declaratory judgment petition in the Marshall County Chancery Court later that day on behalf of Ms. Boote in her individual capacity as a named beneficiary. The petition was filed under the same case number as the pending probate proceedings, and a copy of the third codicil was attached to the petition. The petition requested a hearing to determine whether the third codicil could be admitted to probate along with the will and the first two codicils. Mr. Bussart noticed the deposition of Mr. Davidson a few days later.

---

[13]The record on appeal is unclear regarding how Mr. Bussart came to this knowledge.

The trial court did not hold a hearing on the admissibility of the third codicil. Instead, on December 14, 2001, one week after the declaratory judgment petition was filed, the court entered an order admitting the will and the first two codicils to probate in solemn form. The order did not mention the third codicil or Ms. Boote's pending petition for declaratory judgment. Following the entry of the December 14, 2001 order, Ms. Shivers and Ms. Gerritsen filed a motion to dismiss the declaratory judgment petition on grounds of res judicata and judicial estoppel and requested that the trial court quash the deposition notice to Mr. Davidson to allow them more time to conduct discovery on the issues raised in the declaratory judgment petition.

The trial court held a hearing on Ms. Shivers and Ms. Gerritsen's motion on January 9, 2002. At the hearing, Mr. Bussart moved for a new trial. The trial court agreed to allow Mr. Bussart to reduce his motion to writing, took the motion to dismiss under advisement, and stayed Mr. Davidson's deposition pending a ruling on the motion to dismiss.

Two days later, Mr. Bussart filed a motion for post-judgment relief based on Tenn. R. Civ. P. 52.02, 59.04, and 60.02. In a sworn affidavit accompanying the motion for post-judgment relief, Ms. Boote said that she had relied on her late husband's attorney, Mr. Davidson, to provide her with all of her husband's testamentary instruments and that he had given her only the will and the first two codicils. She claimed that she first learned that the third codicil was not properly revoked on December 7, 2001, and that she had no reason to believe, prior to the November 15, 2001 hearing, that originals or copies of any other wills or codicils of her husband were still in existence. The motion requested that the trial court amend the December 14, 2001 order admitting the will and the first two codicils to probate in solemn form to include the third codicil or set aside the December 14, 2001 order and determine whether the third codicil should be admitted to probate.

The trial court set a hearing for February 20, 2002 on Ms. Boote's motion for post-judgment relief. At the hearing, Ms. Boote complained that she had been unable to obtain evidence regarding the details surrounding the destruction of the third codicil because the trial court had stayed Mr. Davidson's deposition, and Mr. Davidson refused to discuss the matter unless he was deposed.[14] The trial court refused to lift the stay on Mr. Davidson's deposition and took Ms. Boote's motion for post-judgment relief under advisement. The court discussed the motion to dismiss the declaratory judgment petition and the motion for post-judgment relief at another hearing on June 5, 2002.

On July 3, 2002, the trial court entered an order granting Ms. Shivers and Ms. Gerritsen's motion to dismiss the declaratory judgment petition and denying Ms. Boote's motion for post-judgment relief. The trial court acknowledged that Ms. Boote filed her declaratory judgment petition a week before the entry of the December 14, 2001 order but nevertheless held that the declaratory judgment petition was barred by principles of res judicata and judicial estoppel. The trial court said that Ms. Boote had been questioned specifically regarding whether the will and the first two codicils were the

---

[14]At the time, Mr. Davidson was still representing Ms. Boote in her capacity as the executrix for Mr. Boote's estate. Attorneys are ethically permitted to discuss or testify regarding the circumstances surrounding the execution and revocation of wills and codicils, at least when authorized by the executor or executrix to do so. 1 JACK W. ROBINSON, SR. & JEFF MOBLEY, PRITCHARD ON THE LAW OF WILLS AND ADMINISTRATION OF ESTATES §§ 386, at 581 n.35, 387, at 581-82 (5th ed.1994 & Supp. 2004) ("PRITCHARD"). Ms. Boote was eventually removed as the executrix for Mr. Boote's estate. *Estate of Boote v. Shivers*, 2005 WL 1277867, at *1.

only instruments of Mr. Boote's that needed to be admitted to probate and that it had placed "great weight" on Ms. Boote's testimony in response to these questions in deciding to admit them to probate in solemn form.[15]  With respect to the motion for post-judgment relief, the trial court held that it could not grant Ms. Boote's motion because probate in solemn form "trumps" the Tennessee Rules of Civil Procedure relating to post-judgment motions and Ms. Boote had not alleged fraud in the procurement of the December 14, 2001 order.

The trial court directed that its July 3, 2002 order be entered as a final order subject to immediate appeal under Tenn. R. Civ. P. 54.02 and simultaneously granted Ms. Boote's request for permission to pursue an interlocutory appeal under Tenn. R. App. P. 9.  Ms. Boote filed an application in this court for permission to pursue an interlocutory appeal but did not file a notice of appeal as of right under Tenn. R. App. P. 3.  On August 21, 2002, this court denied Ms. Boote's application to pursue an interlocutory appeal on the ground that the July 3, 2002 order was a final order subject to immediate appeal under Tenn. R. App. P. 3.  Because the jurisdictional deadline for filing a Tenn. R. App. P. 3 notice of appeal as of right had passed, we suggested in our order that Ms. Boote ask the trial court to vacate and re-enter the July 3, 2002 order under Tenn. R. Civ. P. 60 so that she could file a timely Tenn. R. App. P. 3 notice of appeal as of right from the re-entered order.  Ms. Boote followed this suggestion, and on September 6, 2002, the trial court entered an order vacating and re-entering the July 3, 2002 order.  Ms. Boote then filed a timely Tenn. R. App. P. 3 notice of appeal from the re-entered order.[16]

---

[15]Contrary to the trial court's assertion, the transcript of the November 15, 2001 hearing shows that Ms. Boote was not questioned at the hearing regarding whether the will and the first two codicils were all of the instruments that needed to be admitted to probate.  In fact, the transcript shows that Ms. Boote did not testify at the November 15, 2001 hearing at all.

[16]Mr. Davidson's deposition was not taken until August 27, 2002, and it was not filed in the trial court until September 6, 2002.  Accordingly, the trial court did not have the benefit of his testimony prior to the entry of the December 14, 2001 order admitting the will and the first two codicils to probate in solemn form and the July 3, 2002 order dismissing Ms. Boote's declaratory judgment petition and denying her motion for post-judgment relief.  The unavailability of Mr. Davidson's deposition testimony stemmed in part from the trial court's imposition of a stay on discovery and its refusal to lift the stay as requested by Ms. Boote.  Given that the deposition was not filed in the trial court until September 6, 2002, it seems unlikely that the trial court had the opportunity to review it prior to entering the September 6, 2002 order re-entering the July 3, 2002 order so that Ms. Boote could pursue a timely appeal under Tenn. R. App. P. 3.

We do not customarily consider evidence that has neither been presented to nor considered by the trial court unless it has been made part of the record in accordance with Tenn. R. App. P. 14.  *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998).  However, technically speaking, Mr. Davidson's deposition was presented to the trial court prior to the entry of the September 6, 2002 order, and it was therefore includable in the record on appeal at the parties' request.  Tenn. R. App. P. 24(a) advisory comm'n cmts. (a).  Ms. Shivers and Ms. Gerritsen have not challenged the propriety of the trial court's September 6, 2002 order re-entering the July 3, 2002 order.  Moreover, both sides have relied extensively on Mr. Davidson's deposition testimony in their arguments before this court, and his testimony is critical to a proper understanding of the issues on appeal.  Accordingly, we have decided to exercise our discretion to consider Mr. Davidson's deposition testimony to prevent further delay in an already protracted case.

## II.
### MS. BOOTE'S DECLARATORY JUDGMENT PETITION AND POST-JUDGMENT MOTION

Ms. Boote argues that the trial court erred in refusing to consider the third codicil by dismissing her declaratory judgment petition and denying her later motion for post-judgment relief. She notes that she filed a copy of the third codicil as an attachment to her declaratory judgment petition on December 7, 2001, a week before the trial court entered its December 14, 2001 order admitting the will and the first two codicils to probate in solemn form. She contends that because she filed her declaratory judgment petition prior to the entry of the order admitting the will and the first two codicils to probate in solemn form, the trial court was required to provide her with an opportunity to establish the validity of the third codicil and to seek its admission to probate along with the will and the first two codicils.

Ms. Boote also argues that the trial court erred in denying her motion for post-judgment relief. She contends that the trial court applied an incorrect legal standard to her motion based on its erroneous conclusion that probate in solemn form "trumps" the Tennessee Rules of Civil Procedure relating to post-trial motions. If we conclude that the trial court erred in dismissing Ms. Boote's declaratory judgment petition without providing her with the opportunity to establish the validity of the third codicil and seek its admission to probate along with the will and the first two codicils, then we need not decide whether the trial court also erred in denying her later motion for post-judgment relief. Accordingly, we turn first to Ms. Boote's argument that the trial court erred in failing to provide her with an opportunity to establish the third codicil when she filed her declaratory judgment petition on December 7, 2001.

### A.

A will or codicil[17] has no legal effect until it has been admitted to probate. *State v. Lancaster*, 119 Tenn. 638, 651, 105 S.W. 858, 861 (Tenn. 1907); *Weaver v. Hughes*, 26 Tenn. App. 436, 443, 173 S.W.2d 159, 162 (1943); 1 PRITCHARD §§ 35, at 55, 326, at 504. A person nominated by a will to serve as an executrix or executor of a decedent's estate has a duty to institute legal proceedings to probate the will. *Eslick v. Friedman*, 191 Tenn. 647, 651-52, 235 S.W.2d 808, 810 (1951); *Green v. Higdon*, 870 S.W.2d 513, 520 (Tenn. Ct. App. 1993) (*Green I*); 1 PRITCHARD §§ 35, at 55, 329, at 508-09; 3 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON THE LAW OF WILLS §§ 26.33, at 92-93, 26.34, at 96 & n.1 (rev. 2004) ("PAGE ON WILLS"). Proceedings to probate a will are instituted by the filing of a verified petition[18] in the court that exercises probate jurisdiction over the county where the testator or testatrix resided at the time of his or her death. Tenn. Code Ann. § 32-2-101 (2001); 1 PRITCHARD § 326, at 504. In Marshall County, as in most Tennessee counties, probate jurisdiction is vested in the

---

[17]A codicil is simply an amendment to a will. 1 PRITCHARD § 12, at 19; *see, e.g.*, *Lee v. Hale*, 562 S.W.2d 190, 192 (Tenn. 1978). The legal requirements for the execution and revocation of wills apply with equal force to codicils. Tenn. Code Ann. § 32-1-101(2) (2001) (defining the term "[w]ill" to include codicils); 1 PRITCHARD § 12, at 19.

[18]The petition must contain specific information about the petitioner, the decedent, those who would inherit under the will, and those who would inherit in the absence of the will. Tenn. Code Ann. § 30-1-117(a) (2001). The petition must be accompanied by originals or copies of the will and any codicils being offered for probate. Tenn. Code Ann. § 30-1-117(a)(5). The petitioner is required to state in the petition that he or she is unaware of any instrument revoking the will and codicils being offered for probate and that he or she believes that the document or documents being offered constitute the decedent's last will. Tenn. Code Ann. § 30-1-117(a)(9).

chancery court. Act of Mar. 14, 1996, ch. 144, 1996 Tenn. Priv. Acts 40; Tenn. Code Ann. § 16-16-201(a) (Supp. 2004); 1 PRITCHARD §§ 39, at 64, 351, at 536.

There are two types of probate in Tennessee: probate in common form and probate in solemn form. *Delaney v. First Peoples Bank of Johnson City*, 214 Tenn. 355, 364, 380 S.W.2d 65, 69 (1964); 1 PRITCHARD § 325, at 502; *see also* Tenn. Code Ann. § 32-5-103 (2001) (providing for probate of foreign will "either in common or in solemn form").[19] Probate in common form is an extremely informal procedure. *McClure v. Wade*, 34 Tenn. App. 154, 173, 235 S.W.2d 835, 843 (1950); 1 PRITCHARD § 331, at 511-12. There is no requirement that interested parties be given notice of the proceedings, Tenn. Code Ann. § 30-1-117(b); *Reaves v. Hager*, 101 Tenn. 712, 720, 50 S.W. 760, 762 (1899); *In re Estate of Powers*, 767 S.W.2d 659, 660 (Tenn. Ct. App. 1988); 1 PRITCHARD § 331, at 511, and a judicial hearing is not required to have the will admitted to probate, Tenn. Code Ann. § 16-16-201(b); 3 PAGE ON WILLS § 26.110, at 292.

The clerk and master of the chancery court is statutorily authorized to probate wills in common form. Tenn. Code Ann. § 16-16-201(b). Thus, in many cases, the will can be admitted to probate in common form on the same day that the petition is filed. The clerk and master of the chancery court simply reviews the petition for completeness, collects the required fees, and enters an order admitting the will to probate in common form. After taking a bond and administering the appropriate oath or affirmation, the clerk and master issues letters testamentary to the person nominated by the testator or testatrix to serve as the executrix or executor for the estate. Tenn. Code Ann. §§ 30-1-111 (2001), 30-1-201(a)(2) (2001); 1 PRITCHARD § 36, at 58-59; 2 PRITCHARD §§ 595, at 108-09, 596, at 109-10, 601, at 113.

Probate in solemn form is a much more formal affair. All interested parties are entitled to receive notice of the proceedings and of their right to participate in them. Tenn. Code Ann. § 30-1-117(b); 1 PRITCHARD §§ 341, at 523-24, 342, at 524-25. There must be a judicial hearing at which the will is formally offered for probate. Tenn. Code Ann. § 16-16-201(b); 1 PRITCHARD § 343, at 525. At the hearing, the proponent of the will must produce all living witnesses who attested its execution for examination. *In re Estate of King*, 760 S.W.2d 208, 210 (Tenn. 1988); 1 PRITCHARD § 345, at 526-27.[20] The court must enter an order accepting or rejecting the will for probate in solemn form, but there is no requirement that the court enter the order on the same day that the in solemn form hearing is held. 1 PRITCHARD § 343, at 525-26; 3 PAGE ON WILLS § 26.110, at 289-90.

Prior to the entry of an order admitting a will to probate in common form or in solemn form, the will can be challenged directly by means of a will contest. 1 PRITCHARD §§ 358, at 550, 396, at 591. However, because of the procedural and evidentiary distinctions between the two types of probate proceedings, the conclusiveness of an order admitting a will to probate differs depending on whether it was admitted to probate in common form or in solemn form. 1 PRITCHARD § 325, at 503-04. Historically, orders of both types have been immune from attack in all collateral proceedings absent

---

[19]For a discussion of the historical development of the two procedures, see 3 PAGE ON WILLS § 26.7, at 20-22.

[20]In its discretion, the court may allow the testimony of any attesting witness to be taken by interrogatories or deposition where the witness is out of the state or county or is unable to testify in person. Tenn. Code Ann. § 32-2-104(b) (2001); 1 PRITCHARD § 346, at 527-29.

allegations of fraud in the procurement of the order itself. *Ledbetter v. Ledbetter*, 188 Tenn. 44, 49-50, 216 S.W.2d 718, 721 (1949); *Murrell v. Rich*, 131 Tenn. 378, 403, 175 S.W. 420, 427 (1914); *Ex parte Williams*, 69 Tenn. 529, 530-31, 1878 WL 4406, at * 1 (1878); 1 PRITCHARD §§ 45, at 73, 325, at 503-04, 327, at 505, 335, at 515-16, 337, at 517-18.[21]  However, even after an order has been entered admitting a will to probate in common form, the will can still be challenged directly in a will contest at any time up to two years following the date of entry of the order.  Tenn. Code Ann. § 32-4-108 (2001); *Murell v. Rich*, 131 Tenn. at 403-04, 175 S.W. at 427; 1 PRITCHARD §§ 338, at 519, 366, at 559; 3 PAGE ON WILLS §§ 26.113, at 296-97, § 26.114, at 298-99.  By contrast, once an order admitting a will to probate in solemn form has been entered, the will cannot be challenged in a later will contest. *Jennings v. Bridgeford*, 218 Tenn. at 292, 403 S.W.2d at 291; *State v. Lancaster*, 119 Tenn. at 651, 105 S.W. at 861; 1 PRITCHARD § 325, at 503.[22]  Thus, if there is to be a will contest at all in proceedings to probate a will in solemn form, it must be initiated prior to the entry of the final order.

The purpose of a will contest is to determine once and for all who is entitled to inherit the decedent's property. *In re Estate of Barnhill*, 62 S.W.3d 139, 143 (Tenn. 2001); *Jones v. Witherspoon*, 182 Tenn. 498, 505, 187 S.W.2d 788, 791 (1945); *Green v. Higdon*, 891 S.W.2d 222, 222 (Tenn. Ct. App. 1994) (*Green II*); 1 PRITCHARD § 351, at 537-38.  The primary question to be decided in a will contest is whether or not the decedent left a valid will. *In re Estate of Barnhill*, 62 S.W.3d at 140 n.1; *In re Estate of Eden*, 99 S.W.3d 82, 88 (Tenn. Ct. App. 1995).  Everyone who claims an interest in the decedent's estate has a right to become a party to the will contest, *Petty v. Call*, 599 S.W.2d 791, 793 (Tenn. 1980); *Lillard v. Tolliver*, 154 Tenn. 304, 323, 285 S.W. 576, 582 (1926); 3 PAGE ON WILLS § 26.52, at 144-47, and to demand a jury trial on disputed questions of fact, Tenn. Code Ann. §

_____

[21]The Tennessee Rules of Civil Procedure were adopted January 26, 1970 by order of the Tennessee Supreme Court and went into effect on January 1, 1971. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Hunter v. Bowman*, 535 S.W.2d 853, 854 (Tenn. 1976).  As explained below, we have concluded that the trial court erred by refusing to consider the third codicil when Ms. Boote filed it as an attachment to her December 7, 2001 declaratory judgment petition.  Accordingly, we need not decide in the present case whether the historical rule – that orders admitting wills to probate could not be collaterally attacked on any ground other than fraud in the procurement of the order – has been supplanted by the adoption of Tenn. R. Civ. P. 59 and 60. *Jennings v. Bridgeford*, 218 Tenn. 287, 292, 403 S.W.2d 289, 291 (1966) ("It is settled in this State, that the judgment probating a Will in solemn form cannot be questioned except by a bill in Chancery attacking the judgment for fraud in its procurement, *as any other judgment may be set aside*." (emphasis added)).

[22]See also *Murrell v. Rich*, 131 Tenn. at 397-99, 175 S.W. at 425-26 ("If it is an uncontested will, the court of first instance may admit it to probate in either common form or solemn form, but, if it be a contested will, the only power possessed by that court in respect of it is to cause the fact that it is contested to be certified to the circuit court, and to send the original will to that court, and to take such action in respect of bonds, *et cetera*, as our statutes authorize in such cases . . . . If a will is contested when presented to the probate court, *or if a contest arises after presentation and before judgment*, the jurisdiction of the circuit court *ipso facto* attaches over the subject-matter of the contest. . . . The statute does not prescribe a manner in which it shall be made to appear to the . . . probate court that the validity of a will is contested, but it is clear that the existence of that condition or state of facts in respect of a will offered for probate *at the time offered, or thereafter and before judgment in such court on the matter*, is that which fixes the status of the will." (second and fourth emphases added and citation omitted)); *cf.* W. Va. Code § 41-5-5 ("At any time after the petition [to admit a will to probate in solemn form] is filed and before final order is made admitting or refusing to admit the will to probate any person desiring to contest the will may appear and file a notice of contest in the proceeding, stating concisely the grounds of such contest."); Peter Nicolas, *Fighting the Probate Mafia:  A Dissection of the Probate Exception to Federal Court Jurisdiction*, 74 S. CAL. L. REV. 1479, 1506 n.148 (2001) (noting that under English law prior to the American Revolution, an "order admitting a will to probate in the solemn form was binding on all parties who appeared in the proceeding or who were given notice.").

32-4-107(a) (2001); *Jackson v. Patton*, 952 S.W.2d 404, 405 (Tenn. 1997); 1 PRITCHARD § 381, at 576-77; 3 PAGE ON WILLS §§ 26.85, at 219-20, 26.86, at 220-23.  Where the parties dispute which wills and codicils represent the decedent's last valid will and testament, the competing instruments must all be submitted to the trial court for adjudication in the will contest.  *Bearman v. Camatsos*, 215 Tenn. 231, 239, 385 S.W.2d 91, 95 (1964); *Durell v. Martin*, 172 Tenn. 97, 103, 110 S.W.2d 316, 318 (1937); *Lillard v. Tolliver*, 154 Tenn. at 323, 285 S.W. at 582; 1 PRITCHARD §§ 355, at 545, 394, at 588-89. The trial court or the jury, as the case may be, must then decide which wills and codicils, taken together, constitute the decedent's last valid will and testament.  *Green I*, 870 S.W.2d at 523; 1 PRITCHARD §§ 355, at 545, 381, at 576 n.11.

The initiation of a will contest temporarily divests the probate court of its authority to enter an order admitting a will to probate in solemn form.  *In re Estate of King*, 760 S.W.2d at 212; *Lowder v. Anderson*, 4 Tenn. Civ. App. 620, 628-29 (Tenn. Ct. Civ. App. 1914); 1 PRITCHARD §§ 367, at 561, 377, at 569-71.  As soon as the probate court is made aware of a contest, it must halt the in solemn form probate proceedings and determine whether the person seeking to contest the will has standing to pursue a will contest.  *In re Estate of King*, 760 S.W.2d at 211-12; *In re Will of Ambrister*, 205 Tenn. 737, 744-46, 330 S.W.2d 330, 334-35 (1959); *Jenkins v. Jenkins*, 168 Tenn. 292, 296-98, 77 S.W.2d 805, 806-07 (1935); *Murrell v. Rich*, 131 Tenn. at 398, 175 S.W. at 425; 1 PRITCHARD §§ 354, at 543-44, 364, at 556-57, 377, at 569-71.  Standing to pursue a will contest is limited to those who would benefit under the terms of another will or codicil or the laws of intestate succession if the will contest is successful. *Jennings v. Bridgeford*, 218 Tenn. at 290-92, 403 S.W.2d at 290-91; *Cowan v. Walker*, 117 Tenn. 135, 148, 96 S.W. 967, 970 (1906); 1 PRITCHARD § 354, at 540, 369, at 562.

If the probate court sustains the contestant's right to pursue a will contest, it must require the contestant to enter into a $500 bond and cause a certificate of contest and the originals of all wills and codicils at issue to be filed in the court chosen for the will contest.  Tenn. Code Ann. § 32-4-101 (Supp. 2004).[23]  Only if the probate court determines that the contestant lacks standing to pursue a will contest can it resume the probate proceedings and enter an order admitting the will to probate in solemn form. *Jenkins v. Jenkins*, 168 Tenn. at 296-97, 77 S.W.2d at 806; Tenn. Code Ann. § 32-4-101.[24]  If the

---

[23]For many years, all will contests were tried in circuit court.  *In re Estate of Barnhill*, 62 S.W.3d at 142; 1 PRITCHARD § 351, at 535-36.  In 1991, the General Assembly granted probate courts of record and chancery courts concurrent jurisdiction with the circuit courts to try will contests.  Act of April 16, 1991, ch. 152, 1991 Tenn. Pub. Acts 277 (codified as amended at Tenn. Code Ann. § 32-4-109 (Supp. 2004)); 1 PRITCHARD § 351, at 536-37.  From 1991 until 2002, the statutes governing will contests provided that where the will contest was to be tried in the same court that was administering the probate proceedings, the court was not required to enter a certificate of contest.  Tenn. Code Ann. § 32-4-109 (2001); 1 PRITCHARD § 351, at 537.  In 2002, the General Assembly repealed the statutory language allowing the court to forego the filing of a certificate of contest in such cases.  *Compare* Tenn. Code Ann. § 32-4-109 (2001) *with* Tenn. Code Ann. § 32-4-109 (Supp. 2004).

[24]In 2002, the Tennessee General Assembly amended the statutes governing will contests to require the probate court to enter an order expressly sustaining or denying the putative contestant's right to pursue a will contest.  Act of April 10, 2002, ch. 631, § 1, 2002 Tenn. Pub. Acts. 1651, 1651-52 (codified at Tenn. Code Ann. § 32-4-101); 1 PRITCHARD §§ 325, at 503, 358, at 551, 360, at 554.  This amendment did not take effect until July 1, 2002, several months after Ms. Boote filed her declaratory judgment petition.  Act of April 10, 2002, ch. 631, § 4, 2002 Tenn. Pub. Acts at 1652.  Accordingly, this amendment has no bearing on our analysis of the issues involved in the present appeal. In any event, whenever a will contest is to be tried in the same court that has been presiding over the probate proceedings, the court should draw a clear distinction, both in the record and in its dealings with the parties, between its function as

(continued...)

probate court ignores an inchoate will contest and proceeds with the entry of an order admitting the will that was originally offered to probate in solemn form, the court's order is void and must be reversed on appeal. *In re Will of Ambrister*, 205 Tenn. at 746, 330 S.W.2d at 335; *see also In re Estate of King*, 760 S.W.2d at 211-12.

**B.**

The central issue in this appeal is whether Ms. Boote's December 7, 2001 declaratory judgment petition amounted, in substance, to a notice of contest. If it did, the trial court had no authority to enter the December 14, 2001 order admitting the will and the first two codicils to probate in solemn form. Determining whether the course of proceedings in the trial court amounted to the initiation of a will contest is a question of law which this court reviews de novo. *In re Will of Ambrister*, 205 Tenn. at 743-46, 330 S.W.2d at 333-35; *Jenkins v. Jenkins*, 168 Tenn. at 297, 77 S.W.2d at 806. As explained below, we have concluded that Ms. Boote's declaratory judgment petition, with a copy of the third codicil attached, was sufficient to initiate a will contest. Accordingly, the trial court erred in entering the December 14, 2001 order admitting the will and the first two codicils to probate in solemn form and ignoring the third codicil.

There are no formal requirements for the initiation of a will contest. *Jenkins v. Jenkins*, 168 Tenn. at 297, 77 S.W.2d at 806; 1 PRITCHARD § 360, at 554. As the Tennessee Supreme Court has explained, a "person desiring to contest a will need do no more than make that fact known" to the court. *In re Estate of King*, 760 S.W.2d at 210. The filing of a later will or codicil that purports to alter or amend an earlier will or codicil in whole or in part is sufficient to initiate a will contest. *In re Will of Ambrister*, 205 Tenn. at 746, 330 S.W.2d at 334; *Murrell v. Rich*, 131 Tenn. at 399-400, 175 S.W. at 426. The probate court is required to take notice of a later will or codicil which is pleaded as constituting a revocation or partial revocation of an earlier instrument. *In re Will of Ambrister*, 205 Tenn. at 745-46, 330 S.W.2d at 334-35; *Murrell v. Rich*, 131 Tenn. at 399-400, 175 S.W. at 426. This is so even if the later will or codicil is not itself offered for probate, and even if it is not provable because the original has been lost or destroyed. *In re Will of Ambrister*, 205 Tenn. at 745, 330 S.W.2d at 334.

Judged by these standards, it is abundantly clear that Ms. Boote's December 7, 2001 declaratory judgment petition amounted, in substance, to the initiation of a will contest. Ms. Boote filed her petition in the court presiding over the in solemn form probate proceedings, and she filed it under the same case number. A copy of the third codicil was attached to the petition, and it appeared, on its face, to have been validly executed. If admitted to probate, the third codicil would unquestionably have operated as a partial revocation of the will and first two codicils by providing Ms. Boote with a much larger share of Mr. Boote's estate.[25] Ms. Boote explained in her petition why the third codicil should

---

[24](...continued)
a court of probate and its function as the trial court of record in the will contest. 1 PRITCHARD §§ 351, at 537, 378, at 572.

[25]Under the will and first two codicils, Ms. Boote stood to inherit a $600,000 marital trust. By contrast, under the third codicil, she stood to inherit both the $600,000 marital trust and one-third of an estate valued at well over thirty million dollars. Thus, the third codicil, if admitted to probate, would undoubtedly have operated as a partial revocation

(continued...)

be admitted to probate and requested a hearing to establish its validity. Thus, while Ms. Boote's declaratory judgment petition was not styled as a formal "Notice of Contest," we have no difficulty concluding that it was, in substance, a notice of contest.

In reaching this conclusion, we find the Tennessee Supreme Court's decision in *In re Will of Ambrister*, 205 Tenn. 737, 330 S.W.2d 330 (1959), to be particularly instructive.[26] In *Ambrister*, the testatrix executed two wills in the month before she died. The second will purported to revoke the first. On the day the testatrix died, the beneficiaries under the second will presented it to the county court clerk for probate in common form. The clerk followed the standard procedure for admitting a will to probate in common form but neglected to enter an order admitting it to probate. Three days later, the primary beneficiary under the first will filed a petition to have the first will admitted to probate in solemn form. The county court set a hearing date, and notice of the hearing was provided to all interested parties.

What followed was a procedural morass. The beneficiaries under the second will did not think they should have to assume the posture of will contestants. So instead of filing a notice of contest to the first will in the in solemn form proceedings, they filed a petition on the date set for the in solemn form hearing requesting that the county court enter an order nunc pro tunc admitting the second will to probate in common form as of the day it was originally presented to the county court clerk. The county court proceeded with the in solemn form hearing as scheduled. At the hearing, the court asked counsel for both sides whether the course of the proceedings thus far amounted, in substance, to the initiation of a will contest. Counsel refused to answer the question directly. The court heard testimony regarding the execution of the first will but also allowed the county court clerk to testify regarding the presentation of the second will for probate in common form.

At the conclusion of the hearing, the court indicated that it would admit the first will to probate in solemn form and directed counsel for the proponent of the first will to prepare an order for the court's approval. However, a few minutes later, the court announced that it would also enter an order admitting the second will to probate in common form but that the order would not be nunc pro tunc. The court entered an order admitting the second will to probate in common form later that day, and three days later, it entered an order admitting the first will to probate in solemn form. The proponent of the first will filed a petition to contest the second will, and the county court certified the contest to the circuit court for trial. The circuit court concluded that the first will had not been contested, refused a request to declare the county court's order admitting the first will to probate in solemn form void, and held that it lacked jurisdiction to entertain a contest of the second will because an order entering the first will to probate in solemn form had already been entered.

The Tennessee Supreme Court reversed the circuit court's order. The court observed that the case would have been greatly simplified had the beneficiaries under the second will filed a simple notice of contest to the first will in response to the petition for probate in solemn form. Nevertheless, the court

[25](...continued)
of the earlier will and codicils. Tenn. Code Ann. § 32-1-201(1) (providing that a will or any part of a will is revoked by "[a] subsequent will . . . which revokes the prior will or part expressly or by inconsistency"); *see also* Tenn. Code Ann. § 32-1-101(2) (providing that the term "[w]ill" includes a codicil).

[26]We note that neither side brought this case to the court's attention.

found that "what they did do amounted in substance to a notice of contest." *In re Will of Ambrister*, 205 Tenn. at 744, 330 S.W.2d at 333. The court noted the "general rule that the bringing in of a later will which either expressly or impliedly appears to revoke an earlier will constitutes a contest" and held that "when the existence of an alleged later will was called to his attention [i.e., the county court's]," the county court "should have simply certified them both to the Circuit Court" for the trial of a will contest. *In re Will of Ambrister*, 205 Tenn. at 746, 330 S.W.2d at 334-35. The court concluded that the circuit court erred in failing to declare the county court's order admitting the first will to probate in solemn form void. Accordingly, the case was remanded to the circuit court for the trial of a will contest and a determination regarding which of the two wills represented the decedent's last valid will and testament.

The *Ambrister* decision stands for the proposition that when a court conducting proceedings to probate a will in solemn form is made aware of a later will or codicil, the court cannot simply ignore it and proceed with the entry of an order admitting an earlier will to probate in solemn form without first making an inquiry into the validity of the later instrument. This rule arises from the very nature of probate proceedings. Under Tennessee law, every person of sound mind over the age of eighteen has the right, within the limits of law and public policy, to direct how his or her property will be distributed at death through the execution of wills and codicils. Tenn. Code Ann. § 32-1-102 (2001); 1 PRITCHARD § 1, at 1.

Proceedings to admit a will to probate are *in rem* proceedings. *Jennings v. Bridgeford*, 218 Tenn. at 294-95, 403 S.W.2d at 292; *Reaves v. Hager*, 101 Tenn. at 718, 50 S.W. at 762; 1 PRITCHARD § 45, at 73; 3 PAGE ON WILLS § 26.51, at 141. Their function is to provide the court with the information it needs to decide the proper distribution of the *res*, i.e., the estate. *Fransioli v. Podesta*,175 Tenn. 340, 347, 134 S.W.2d 162, 165 (1939); *Lillard v. Tolliver*, 154 Tenn. at 312-13 285 S.W. at 578-79; 1 PRITCHARD § 45, at 73. In making this determination, the court's polestar is the intent of the testator or testatrix. *In re Dye's Estate*, 565 S.W.2d 219, 221 (Tenn. Ct. App. 1977). The proceedings are designed not to advance the interests of the living parties but rather to vindicate the right of the decedent to dispose of his or her property as he or she saw fit. *Jennings v. Bridgeford*, 218 Tenn. at 293-94, 403 S.W.2d at 291-92; *Hodges v. Bauchman*, 16 Tenn. (8 Yer.) 186, 188-90, 1835 WL 929, at *1-2 (1835). Because the rule of *Ambrister* is designed to vindicate the rights of the decedent rather than the rights of the living parties to the probate proceedings, it applies even where the parties have been less than forthcoming about whether they are intent on pursuing a will contest. *In re Estate of King*, 760 S.W.2d at 209-212; *In re Will of Ambrister*, 205 Tenn. at 740-43, 330 S.W.2d at 332-33.

When Ms. Boote filed her December 7, 2001 declaratory judgment petition with the third codicil attached, the trial court had not yet entered an order admitting the will and the first two codicils to probate in solemn form. Once the trial court was made aware of a later testamentary instrument that purported to revoke portions of the will and the first two codicils, it had an obligation to bring the in solemn form proceedings to an immediate halt and conduct an inquiry into whether Ms. Boote had standing to pursue a will contest based on the third codicil. The trial court had no authority to enter the December 14, 2001 order without first conducting this inquiry. Only if the trial court determined that Ms. Boote lacked standing to pursue a will contest could it resume the probate proceedings and enter an order admitting the will and the first two codicils to probate in solemn form. The trial court's failure to inquire into Ms. Boote's standing to pursue a will contest, including providing her with an evidentiary hearing to establish the validity of the third codicil, was reversible error.

**C.**

Ms. Shivers and Ms. Gerritsen argue that the trial court correctly dismissed Ms. Boote's declaratory judgment petition based on principles of res judicata and judicial estoppel. In its July 3, 2002 order, the trial court acknowledged that Ms. Boote filed her declaratory judgment petition prior to the entry of the order admitting the will and the first two codicils to probate in solemn form. However, the trial court found that it could apply principles of res judicata and judicial estoppel to the November 15, 2001 hearing rather than the resulting December 14, 2001 order. The trial court expressly stated that its decision to apply principles of res judicata and judicial estoppel to the hearing rather than the resulting order rested largely on Ms. Boote's testimony in response to questioning. According to the trial court, it "gave great weight to the testimony of [Ms. Boote] as it relates to what she knew when questioned about whether the testamentary documents presented to the Court were all of the documents to be probated," and "[i]n reliance on her testimony, the Court probated the documents presented at that time."

The primary defect in the trial court's reasoning is that the record contains no indication that the question-and-answer session to which the court alluded ever took place. The hearing transcript shows clearly that Ms. Boote was not questioned at the November 15, 2001 hearing regarding whether the will and the first two codicils were the only testamentary instruments of Mr. Boote that needed to be admitted to probate in solemn form. In fact, the transcript shows that Ms. Boote did not testify at the hearing at all.[27] Nevertheless, if the trial court were correct in its ultimate conclusion that the declaratory judgment petition was barred based on principles of res judicata and judicial estoppel, we would affirm its decision dismissing the petition in spite of the court's reliance on a faulty factual premise.[28] As explained below, however, neither res judicata nor judicial estoppel was a sound basis for the trial court's dismissal of the declaratory judgment petition and refusal to consider the third codicil.

Principles of res judicata have no application to this case. Res judicata is a claim preclusion doctrine that promotes finality in litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976); *Jordan v. Johns*, 168 Tenn. 525, 536-37, 79 S.W.2d 798, 802 (1935). It bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit. *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Brown v. Brown*, 29 S.W.3d 491, 495 (Tenn. Ct. App. 2000); *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995). In order for the doctrine of res judicata to apply, there must be a prior judgment concluding the rights of the parties on the merits. *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989); *Lewis v. Muchmore*, 26 S.W.3d 632, 637 (Tenn. Ct. App. 2000). A trial court's decision that a subsequent lawsuit is barred by principles of res judicata presents a question of law which this court reviews de novo. *Tareco Props., Inc. v. Morriss*, No. M2002-02950-COA-R3-CV, 2004 WL 2636705, at *12 n.20 (Tenn. Ct. App. Nov. 18, 2004) (No Tenn.

---

[27]What the trial court may have had in mind was Ms. Boote's assertion in the original verified petition that she was aware of no other document still in existence that revoked or altered the will and the first two codicils.

[28]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Cont'l Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999); *Allen v. Nat'l Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metro. Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

R. App. P. 11 application filed); *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 566 (Tenn. Ct. App. 1991).

Parties asserting a res judicata defense must demonstrate that: (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was final and on the merits; (3) the same parties or their privies were involved in both proceedings; and (4) both proceedings involved the same cause of action. *Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003); *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the re-examination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the legal rights and relations of the parties. *White v. White*, 876 S.W.2d 837, 839-840 (Tenn. 1994); *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000).

In this case, the most basic requirement of a res judicata defense – i.e., the existence of a prior judgment – is missing. *See Tenn. Dep't of Children's Servs. v. Hoffmeyer*, No. M2002-00076-COA-R3-JV, 2003 WL 1092779, at *8 (Tenn. Ct. App. Mar. 13, 2003) (No Tenn. R. App. P. 11 application filed); *see also Lewis v. Muchmore*, 26 S.W.3d at 637 (stating that doctrine of res judicata applies only where there is an "existing final judgment"). Ms. Boote filed her declaratory judgment petition on December 7, 2001. The trial court did not enter the order admitting the will and the first two codicils to probate in solemn form until one week later, on December 14, 2001. Thus, at the time Ms. Boote filed her petition, there was no prior judgment to which principles of res judicata could attach. Accordingly, the trial court erred in relying on res judicata as a ground for dismissing Ms. Boote's declaratory judgment petition and refusing to address the third codicil.

The doctrine of judicial estoppel likewise has no application in this case. Judicial estoppel is an equitable doctrine designed to prevent parties from "gaining an unfair advantage" in judicial proceedings by making inconsistent statements on the same issue in different lawsuits. *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999) (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 30 (Tenn. 1995)). As the Tennessee Supreme Court has warned, "[o]ne cannot play fast and loose" with the courts. *Fidelity-Phenix Fire Ins. Co. of N.Y. v. Jackson*, 181 Tenn. 453, 464, 181 S.W.2d 625, 630 (1944); *accord Webber v. Webber*, 109 S.W.3d 357, 359 (Tenn. Ct. App. 2003); *Woods v. Woods*, 638 S.W.2d 403, 406 (Tenn. Ct. App. 1982). A trial court's application of the doctrine of judicial estoppel presents a question of law which this court reviews de novo. *Carvell v. Bottoms*, 900 S.W.2d at 30; *Terrell v. Terrell*, 200 Tenn. 289, 295-96, 292 S.W.2d 179, 182 (1956); *Bubis v. Blackman*, 58 Tenn. App. 619, 632-33, 435 S.W.2d 492, 498 (1968).

The doctrine of judicial estoppel does not apply to "anything short of a willfully false statement of fact." *D. M. Rose & Co. v. Snyder*, 185 Tenn. 499, 520, 206 S.W.2d 897, 906 (1947); *accord Werne v. Sanderson*, 954 S.W.2d 742, 745 (Tenn. Ct. App. 1997). Statements made in prior proceedings will not prevent a litigant from establishing the truth in a later proceeding where the litigant can show that the prior statements were made "inconsiderately, by mistake, or without full knowledge of the facts." *Tate v. Tate*, 126 Tenn. 169, 212, 148 S.W. 1042, 1054 (1912); *accord Sturkie v. Bottoms*, 203 Tenn. 237, 242, 310 S.W.2d 451, 453 (1958); *see also* 1 PRITCHARD § 363, at 555-56 (stating that an executor who offered a will for probate would not be estopped from contesting it later where the executor offered the will for probate in good faith and without knowledge of the defects in its execution). Moreover, litigants are entitled to have an opportunity to explain that a prior statement was inadvertent, made inconsiderately, or based on a mistake of fact or law before the doctrine of judicial estoppel can be

applied. *State ex rel. Scott v. Brown*, 937 S.W.2d 934, 936 (Tenn. Ct. App. 1996); *State ex rel. Ammons v. City of Knoxville*, 33 Tenn. App. 622, 630-31, 232 S.W.2d 564, 567-68 (1950).

Ms. Boote did not, as the trial court erroneously stated in its order, offer any testimony at the November 15, 2001 hearing. Thus, the only prior statement by Ms. Boote that is at issue is her assertion in the original petition to admit the will and the first two codicils to probate in solemn form that she was "aware of no document(s) *in existence* that either *revoke or alter* the instruments being offered by her for probate in the Decedent's Last Will & Testament and two (2) Codicils thereto."[29] Ms. Boote verified the petition, and she was therefore fully responsible for the accuracy of the statements contained in it.

However, this statement does not provide an appropriate basis for the application of judicial estoppel because the record does not show that it was willfully false. To the contrary, the undisputed evidence in the record points overwhelmingly to the conclusion that Ms. Boote fully believed this statement to be true at the time she made it. Mr. Boote and Mr. Davidson were the only people who had first-hand knowledge of the details surrounding the destruction of the third codicil. By the time Ms. Boote filed her original petition, Mr. Boote had passed away, and Mr. Davidson had not, by his own admission, provided Ms. Boote with a copy of the third codicil, informed her that a copy of the third codicil still existed, or given her any reason to believe that the attempted revocation of the third codicil was anything other than fully effective. It was eminently reasonable for Ms. Boote to rely on her late husband's attorney to provide her with the documents and information she needed to have her husband's will and codicils admitted to probate. Thus, her prior statement was not willfully false.

Ms. Shivers and Ms. Gerritsen seek to circumvent the willful falsity requirement for the application of judicial estoppel based on the argument that Mr. Davidson knew the circumstances surrounding the attempted revocation of the third codicil and that his knowledge is imputed to Ms. Boote as a matter of law. As Ms. Shivers and Ms. Gerritsen correctly note, knowledge obtained by an attorney during the course of his or her representation of a client is conclusively imputed to the client. *Moody v. Moody*, 681 S.W.2d 545, 546 (Tenn. 1984); *DeLong v. Vanderbilt Univ.*, No. M2002-02655-COA-R3-CV, 2005 WL 1981793, at *3 (Tenn. Ct. App. Aug. 15, 2005). However, this rule applies only if the attorney gained the information during the course of his or her representation of the particular client to whom the knowledge is to be imputed. *Bellar v. Baptist Hosp., Inc.*, 559 S.W.2d 788, 789 (Tenn. 1978); *Neilson v. Weber*, 107 Tenn. 161, 165, 64 S.W. 20, 21 (1901) ("a client is not affected with notice, because his attorney may know facts which he has obtained from outside sources, and not in the matter and course of his employment for such client"). Mr. Davidson learned the facts surrounding the destruction of the third codicil through his personal participation in them. At that time, he was representing Mr. Boote, not Ms. Boote. Thus, there is no more basis for imputing Mr. Davidson's knowledge of the circumstances surrounding the attempted revocation of the third codicil to Ms. Boote than there would be for imputing it to Ms. Shivers and Ms. Gerritsen. Accordingly, we

---

[29]Verified Pet. to Probate Estate [Will] of the Decedent (in Solemn Form) and Application for Letters – Testamentary ¶ 9 (emphasis added).

-19-

reject Ms. Shivers and Ms. Gerritsen's attempt to sustain the trial court's application of the doctrine of judicial estoppel based on imputation.[30]

### III.
### THE ATTEMPTED REVOCATION OF THE THIRD CODICIL

From our initial review of this case in preparation for oral argument, it appeared that we might be able to conclude that the circumstances surrounding the destruction of the third codicil amounted to a valid revocation as a matter of law. If so, any deficiencies in the procedures followed by the trial court would have amounted to nothing more than harmless error, and we would be able to affirm the trial court's judgment on this alternative ground. Accordingly, at oral argument, we directed the parties to provide supplemental briefing regarding this possible alternative ground for affirming the trial court's order dismissing Ms. Boote's declaratory judgment petition and denying her motion for post-judgment relief.

The supplemental briefs revealed that the parties are in agreement regarding the facts surrounding the attempted revocation of the third codicil. Both sides agree that Mr. Boote met with Mr. Davidson in late April 2001 and directed him to tear up the third codicil with the purpose of revoking it and that Mr. Davidson offered to retrieve the original of the third codicil from his office safe so that Mr. Boote could tear it up himself. Both sides agree that Mr. Boote declined to tear up the codicil himself, that he left Mr. Davidson's office without tearing it up, and that his last statement to Mr. Davidson on the subject was, "Just tear the damn thing up." Finally, both sides agree that Mr. Davidson did not destroy the third codicil until several months later when Mr. Boote was in the hospital and that the third codicil was not destroyed in Mr. Boote's presence. The parties disagree only on whether these undisputed facts were sufficient, as a matter of law, to revoke the third codicil. This disagreement presents solely a question of law which this court reviews de novo. *Jones v. Jones*, 143 Tenn. 596, 597, 228 S.W. 405, 405 (1921); *Smiley v. Gambill*, 39 Tenn. (2 Head) 164, 168, 1858 WL 3003, at *2 (1858); 1 PRITCHARD § 280, at 446.

Tennessee law recognizes three types of wills: (1) attested wills; (2) holographic wills; and (3) nuncupative wills. Tenn. Code Ann. § 32-1-104 (2001); 1 PRITCHARD § 7, at 13-14.[31] The legal requirements for executing a valid will of each type are specified by statute. Tenn. Code Ann. §§ 32-1-104, 32-1-109 (2001) (attested wills); Tenn. Code Ann. §§ 32-1-105 (2001), 32-1-110 (2001) (holographic wills); Tenn. Code Ann. § 32-1-106 (2001) (nuncupative wills); 1 PRITCHARD § 4, at 7-8.[32]

---

[30]The doctrine of judicial estoppel is also inapplicable in this case because Ms. Boote's statements were not made in different judicial proceedings. Her post-judgment motions were filed in the probate proceeding itself. While her declaratory judgment petition might be viewed as a separate proceeding, it was filed under the same docket number as the probate proceeding.

[31]Tenn. Code Ann. § 32-2-105 (2001) provides additional methods for proving wills executed by military personnel during times of service.

[32]One commentary provides the following explanation for the statutory formalities required to execute a valid will or codicil:

Four discrete functions have been attributed to the formalities – the evidentiary, cautionary,

(continued...)

The statutory requirements for the execution and revocation of wills apply with equal force to codicils. Tenn. Code Ann. § 32-1-101(2). In order to be valid, a will or codicil must be made in writing with the rare exception, applicable only in extreme cases, of a nuncupative will.[33] Even then, the will must be reduced to writing within thirty days of the date the testator or testatrix declared it. Tenn. Code Ann. § 32-1-106(a)(2).

The revocation of wills and codicils is also governed by statute. Tenn. Code Ann. §§ 32-1-201, 32-1-202 (2001)). The revocation statute provides five straightforward[34] methods for revoking a will or codicil. Tenn. Code Ann. §§ 32-1-201, 32-1-202. Wills and codicils cannot be revoked in any other manner. Tenn. Code Ann. § 32-1-202(e). The method of revocation at issue in the present case is revocation by physical destruction.[35] The revocation statute provides that a will or codicil may be revoked by "[b]eing burned, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in the testator's presence and by the testator's direction." Tenn. Code Ann. § 32-1-201(3).[36]

The parties agree that the original of the third codicil was "torn . . . or destroyed" within the meaning of the statute by Mr. Davidson several months after the April 2001 meeting at which Mr. Boote directed him to tear up the third codicil. Tenn. Code Ann. § 32-1-201(3). Thus, the parties are in agreement that the third codicil was destroyed "by the testator's direction" but not "in the testator's

---

[32](...continued)
protective, and channeling functions. The evidentiary function requires solid evidence of the existence and content of the decedent's directions. The cautionary function requires some indication that the decedent arrived at these directions with adequate awareness. The protective function attempts to assure that the contents and the execution of the will were the product of the decedent's free choice. The channeling function is meant to facilitate a substantial degree of standardization in the organization, language, and content of most wills, so that they can be prepared and administered in a fairly routine manner.

RESTATEMENT (THIRD) OF PROP.: WILLS & OTHER DONATIVE TRANSFERS § 3.3 cmt. a, at 217 (1999).

[33]A nuncupative will is valid only if the testator or testatrix made it while in imminent peril of death and the testator or testatrix later died as a result of the impending peril. Tenn. Code Ann. § 32-1-106(a).

[34]As one commentator noted in reference to the similarly straightforward provisions of the Uniform Probate Code, "[i]n the hands of a competent lawyer, concern for creating ambiguity when a will is revoked is minimized." Robert Whitman, *Revocation and Revival: An Analysis of the 1990 Revision of the Uniform Probate Code and Suggestions for the Future*, 55 ALB. L. REV. 1035, 1035 (1992).

[35]The four other methods for revoking a will or codicil are as follows: (1) the valid execution of a later attested or holographic will or codicil that revokes the prior will or codicil expressly or by inconsistency; (2) the valid execution of a separate document of revocation executed with all of the formalities of an attested or holographic will; (3) the subsequent marriage and birth of a child of the testator; or (4) the subsequent divorce of the testator or annulment of the testator's marriage. Tenn. Code Ann. §§ 32-1-201(1)-(2), (4), 32-1-202(a).

[36]The language permitting revocation of a will or codicil through physical destruction by someone other than the testator mirrors the statutory language allowing someone other than the testator to sign the testator's name on an attested will. *Compare* Tenn. Code Ann. § 32-1-201(3) (authorizing revocation through physical destruction by someone other than the testator if done "in the testator's presence and by the testator's direction") *with* Tenn. Code Ann. § 32-1-104(1)(C) (authorizing the signing of the testator's name on an attested will or codicil by someone other than the testator if done "[a]t the testator's direction and in the testator's presence"). *See also* 1 PRITCHARD § 206, at 340-41.

presence." Tenn. Code Ann. § 32-1-201(3). Under the plain language of the revocation statute, the destruction of a will or codicil by a proxy is insufficient to revoke it, even if done at the explicit direction of the testator, unless the testator is actually present for the destruction. Tenn. Code Ann. § 32-1-201(3) (providing that original must be destroyed "in the testator's presence *and* by the testator's direction" (emphasis added)). Accordingly, if we apply the terms of the statute literally, the inescapable conclusion is that the third codicil was not validly revoked.

Ms. Shivers and Ms. Gerritsen offer two main arguments to avoid this result. First, they claim that the statute does not mean what it says. According to Ms. Shivers and Ms. Gerritsen, "[t]his, then, is the law that is codified in Tenn. Code Ann. § 32-1-201: Revocation is effective if the testator intends to revoke his will or codicil and the testator destroys the will with that intent, or another person destroys the will in the testator's presence, *or* at the direction of the testator."[37] In support of this proposition, Ms. Shivers and Ms. Gerritsen rely on two Tennessee Supreme Court cases decided well over a hundred years before the Tennessee General Assembly adopted the first general revocation statute in 1985,[38] an even more ancient case from Connecticut, and a passage from PRITCHARD citing these three cases. *Smiley v. Gambill*, 39 Tenn. (2 Head) 164, 1858 WL 3003 (1858); *Ford v. Ford*, 26 Tenn. (7 Hum.) 92, 1846 WL 1497 (1846); *Card v. Grinman*, 5 Conn. 164, 1823 WL 40 (1823); 1 PRITCHARD § 296, at 464-65. They also mention, though only in passing, a Tennessee Supreme Court case decided in 1921. *Jones v. Jones*, 143 Tenn. 596, 228 S.W. 405 (1921).

These sources fall far short of establishing the proposition for which Ms. Shivers and Ms. Gerritsen have cited them. The two older Tennessee Supreme Court cases do not directly address the requirement of the testator's presence for valid revocation through physical destruction by someone other than the testator. In *Ford v. Ford*, a document the testator believed to be his will was destroyed in his presence and at his direction. In *Smiley v. Gambill*, the testatrix herself burned a document she thought was her will. In both cases, another document had been surreptitiously substituted for the will. The Tennessee Supreme Court held that the destruction of a document the testator or testatrix believes to be his or her will is sufficient to revoke it as long as the document is destroyed by the testatrix herself or by another in the testator's presence and at the testator's direction. *Ford v. Ford*, 26 Tenn. at 102-05, 1846 WL 1497, at *6-7; *Smiley v. Gambill*, 39 Tenn. at 164-68, 1858 WL 3003, at *1-2. The Connecticut case cited by Ms. Shivers and Ms. Gerritsen announced a rule similar to that of *Ford v. Ford* and *Smiley v. Gambill*. *Card v. Grinman*, 5 Conn. at 168-69, 1823 WL 40, at *4. In all three cases, the original of the will at issue was never actually destroyed.

In later cases, the Tennessee Supreme Court expressly limited the rule of *Ford v. Ford* and *Smiley v. Gambill* to cases in which the testator was prevented by force or fraud from destroying the original of the will or in which the testator destroyed or caused to be destroyed a document that the testator mistakenly believed to be his will. *Gregory v. Susong*, 185 Tenn. 232, 238, 241, 205 S.W.2d 6, 9, 10 (1947); *Jones v. Jones*, 143 Tenn. at 600-601, 228 S.W. at 406. Ms. Shivers and Ms. Gerritsen do not claim that Mr. Boote destroyed or caused to be destroyed a document he mistakenly believed to be the third codicil, nor do they argue that Ms. Boote, Mr. Davidson, or anyone else used force or fraud

---

[37]Suppl. Br. of Appellants 6 (emphasis added).

[38]Act of Mar. 28, 1985, ch. 139, §§ 1-2, 1985 Tenn. Pub. Acts 247, 248 (codified as amended at Tenn. Code Ann. §§ 32-1-201, 32-1-202); *see In re Estate of Perigen*, 653 S.W.2d 717, 719 (Tenn. 1983) (noting, in 1983, that "Tennessee has no general statute governing the revocation of wills").

to prevent Mr. Boote from tearing up the third codicil or having it torn up in his presence. Thus, assuming arguendo that the rule of *Ford v. Ford* and *Smiley v. Gambill* remains good law following the enactment of the revocation statute in 1985, that rule has no application to the present case.[39]

Ms. Shivers and Ms. Gerritsen's second argument is that even if the revocation statute means what it says, we should give effect to Mr. Boote's attempted revocation of the third codicil because Mr. Davidson was acting as Mr. Boote's agent at the April 2001 meeting, and he therefore had a duty to destroy the third codicil as instructed by his client. *Simmons v. O'Charley's, Inc.*, 914 S.W.2d 895, 902 (Tenn. Ct. App. 1995). This argument is unpersuasive.

All fifty states have revocation statutes, most of which are modeled after two English statutes, the 1677 Statute of Frauds[40] and the 1837 Wills Act.[41] RESTATEMENT (THIRD) OF PROP.: WILLS & OTHER DONATIVE TRANSFERS § 4.1 cmt. a, at 258; 2 PAGE ON WILLS § 21.31, at 403; *In re Grattan's Estate*, 138 P.2d 497, 500 (Kan. 1943). In most states, as in Tennessee, the revocation statute provides that a will or codicil cannot be revoked through physical destruction by someone other than the testator unless it is destroyed both in the testator's presence and at the testator's direction. RESTATEMENT (THIRD) OF PROP.: WILLS & OTHER DONATIVE TRANSFERS § 4.1 cmt. e, at 260-61; 79 AM. JUR. 2D *Wills* § 509, at 604 (2002); Tenn. Code Ann. § 32-1-201(3). Only a few states allow a will or codicil to be

---

[39]The very section of PRITCHARD on which Ms. Shivers and Ms. Gerritsen rely suggests that the rule of *Ford v. Ford* and *Smiley v. Gambill* may have been abrogated by the adoption of the revocation statute. 1 PRITCHARD § 296, at 464 (noting that after the enactment of the revocation statute in 1985, "[p]resumably, *all* of the [statutory] requirements would need to be present for a valid revocation." (emphasis added)). In the following passage, the Illinois Supreme Court discussed the connection between the existence of a revocation statute and the judicial development of the rule adopted in *Ford v. Ford* and *Smiley v. Gambill*:

> [T]he courts of this country have practically uniformly held, and text-book writers also lay down the rule, that the mere intention to revoke a will, unaccompanied by any act of the testator to execute that intention, will not be sufficient to revoke the will, even though the execution of the intention was frustrated by the fraud and improper conduct of other persons. . . .
>
> In section 255 of Page on Wills the author discusses the question whether the prevention of the revocation of a will by fraud of the beneficiaries is sufficient to justify a court in declaring a revocation under statutes providing what acts will be sufficient for that purpose, and says the weight of authority is that, in the absence of any of the acts specified in the statute, a will cannot be revoked by the intention of the testator alone, no matter by what deceit he was prevented from manifesting his intention. According to the author but three states (Connecticut, Georgia, and Tennessee) have decided a contrary view, but in some, if not all, of these states there was at the time of the decisions no statute specifying what acts were necessary to revoke a will. Mr. Page expresses the view that there ought to be provided by law some remedy in a case where the testator was prevented from revoking his will by actual coercion. Any such remedy, however, would have to be provided by statute.

*Bohleber v. Rebstock*, 99 N.E. 75, 76-77 (Ill. 1912).

[40]An Act for the Prevention of Frauds and Perjuryes, 1677, 29 Car. 2, c. 3, § 6 (Eng.).

[41]Wills Act, 1837, 7 Will. IV and 1 Vict., c. 26, § 20 (Eng.).

revoked by the testator's direction alone. 2 PAGE ON WILLS § 21.31, at 404; 79 AM. JUR. 2D *Wills* § 509, at 604.[42]

Whether the testator's presence is an irreducible requirement for a valid revocation depends entirely on the language used in the revocation statute. 2 PAGE ON WILLS § 21.31, at 404; J. P. M., Annotation, *Necessity that Physical Destruction or Mutilation of Will Be Done in Testator's Presence in Order to Effect Revocation*, 100 A.L.R. 1520, 1520 (1936). In states such as Tennessee where the revocation statute expressly requires the destructive act to be performed in the testator's presence, the courts have uniformly held that the destruction of a will or codicil at the testator's express direction but outside the testator's presence is insufficient to revoke the instrument as a matter of law. 2 PAGE ON WILLS § 21.31, at 404; J. P. M., Annotation, *Necessity that Physical Destruction or Mutilation of Will Be Done in Testator's Presence in Order to Effect Revocation*, 100 A.L.R. at 1520.[43] The courts have explicitly rejected attempts to circumvent the presence requirement through the application of agency principles,[44] even where the person directed to destroy the will was the testator's attorney.[45]

Applying agency principles to the revocation statute in the manner urged by Ms. Shivers and Ms. Gerritsen would eviscerate the express statutory requirement that destruction of a will or codicil by anyone other than the testator must occur both in the testator's presence and at the testator's direction in order to constitute a valid revocation. When the meaning of statutory language is clear, we must interpret it as written, *Kradel v. Piper Indus., Inc.*, 60 S.W.3d 744, 749 (Tenn. 2001); *ATS Se., Inc. v. Carrier Corp.*, 18 S.W.3d 626, 629-30 (Tenn. 2000), rather than using the tools of construction to give the statute another meaning, *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 83 (Tenn. 2001); *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 803 (Tenn. 2000). The undisputed evidence in the

---

[42]Courts in states with revocation states similar to Tennessee's have expressed concern that allowing wills and codicils to be revoked through physical destruction outside the presence of the testator or testatrix could "open [the] door to innumerable cases of fraud." 79 AM. JUR. 2D *Wills* § 509, at 604; *see In re Estate of Haugk*, 280 N.W.2d 684, 690 (Wis. 1979); *cf. Marr v. Marr*, 39 Tenn. (2 Head) 303, 307, 1859 WL 3287, at *2 (1859) ("we shall not, for the first time, establish a doctrine which would render useless the precautions of making a will").

[43]See, e.g., *In re Estate of Gross*, 144 So.2d 861, 861-62 (Fla. Dist. Ct. App. 1962); *Dower v. Seeds*, 28 W. Va. 113, 137-38 (1886); *In re Estate of Haugk*, 280 N.W.2d at 689-91.

[44]*Reiter v. Carroll*, 198 S.W.2d 163, 165-66 (Ark. 1947); *Miller v. Harrell*, 194 S.W. 782, 783-85 (Ky. 1917); *see also* RESTATEMENT (THIRD) OF PROP.: WILLS & OTHER DONATIVE TRANSFERS § 4.1 cmt. l, illus. 8, 9, at 265-66.

[45]*In re Estate of O'Donnell*, 803 S.W.2d 530, 532-33 (Ark. 1991) (refusing to recognize revocation as valid where testator called his attorney and told him to destroy his will and attorney tore up the will as requested); *In re Mitchell's Estate*, 27 N.E.2d 606, 607-09 (Ill. App. Ct. 1940) (holding attempted revocation invalid where testatrix wrote letter to her attorney directing him to destroy her will and attorney tore up the will and later informed the testatrix that he had destroyed the will as instructed); *In re Estate of Kraus*, 385 N.Y.S.2d 933, 934 (N.Y. Sur. Ct. 1976) (declining to recognize revocation as valid where testator told his attorney over the phone to destroy his will and attorney immediately tore up the will as directed ); *see also Jones v. Jones*, 143 Tenn. at 598-601, 228 S.W. at 405-06 (refusing to find attempted revocation valid where testatrix directed her daughter and husband to destroy her will and her husband, who was an attorney and former probate judge, assured her he would destroy it and that it would not be set up for probate).

record shows that the third codicil was not destroyed in Mr. Boote's presence.  Accordingly, the attempted revocation of the third codicil was ineffective as a matter of law.[46]

## IV.

The trial court's December 14, 2001 order admitting the will and the first two codicils to probate in solemn form is vacated and the case is remanded to the trial court for a hearing on whether the third codicil was validly executed.[47]  On remand, Ms. Boote must elect whether to have the will contest tried in the trial court or in the circuit court.  If the trial court determines that Mr. Boote validly executed the third codicil, it must enter an order sustaining Ms. Boote's right to contest the will, require Ms. Boote to enter into a statutory bond, and cause a certificate of the contest and the will and all three codicils to be filed in the court elected by Ms. Boote for the trial of the will contest.  We tax the costs of this appeal to Helen Boote Shivers and Linda Boote Gerritsen and their surety for which execution, if necessary, may issue.

_____

WILLIAM C. KOCH, JR., P.J., M.S.

---

[46]Ms. Boote has invoked the doctrine of dependent relative revocation as an alternative ground for refusing to give effect to the attempted revocation of the third codicil.  This doctrine, if applicable, requires a court to disregard an otherwise valid revocation of a will or codicil in order to achieve a distribution of the estate that most closely approximates the intent of the testator or testatrix.  2 PAGE ON WILLS § 21.57, at 476-83; *Stover v. Kendall*, 41 Tenn. (1 Cold.) 557, 558-61, 1860 WL 3096, at *1-2 (1860); *Greer v. Mc'Crackin*, 7 Tenn. (1 Peck) 301, 303-07, 1824 WL 576, at *3-5 (1824).  Because we have concluded that the attempted revocation of the third codicil was not legally effective in the first place, we need not address Ms. Boote's argument based on the doctrine of dependent relative revocation.

[47]In order to establish the validity of a lost or destroyed will or codicil, the proponent must prove:  (1) that the will or codicil was validly executed; (2) that it was not revoked; (3) that the original has been lost or destroyed; and (4) the contents of the lost will or codicil.  1 PRITCHARD § 51, at 81.  As explained above, the third codicil was not revoked as a matter of law, and it is undisputed that the original of the third codicil was destroyed.  In addition, the copy of the third codicil contained in the record is sufficient to establish its contents.  1 PRITCHARD § 51, at 83 (noting that contents of lost or destroyed will or codicil may be proved by a copy kept by the attorney who drew it); RESTATEMENT (THIRD) OF PROP.: WILLS & OTHER DONATIVE TRANSFERS § 4.1 cmt. k, at 265 (same); *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 221 (Tenn. Ct. App. 1997).  Thus, the only issue left to be determined in order to establish the third codicil is whether it was validly executed by Mr. Boote.